## CONCLUSION

Baker's motions for postconviction relief in these two cases do not allege facts which constitute a denial of his constitutional rights, and, as to certain allegations, the record refutes his claims. Therefore, the district court did not err when it denied Baker's motion for postconviction relief in each case without an evidentiary hearing.

Affirmed.

---

Michael E., individually and as Guardian and
next friend on behalf of his minor child,
Avalyn J., appellant, v. State of
Nebraska et al., appellees.

___ N.W.2d ___

Filed September 6, 2013.     No. S-12-812.

1. **Motions to Dismiss: Immunity: Appeal and Error.** An appellate court reviews de novo whether a party is entitled to dismissal of a claim based on federal or state immunity, drawing all reasonable inferences for the nonmoving party.

2. **Actions: Immunity.** A suit against a state agency is a suit against the State and is subject to sovereign immunity.

3. **Actions: Public Officers and Employees: Immunity: Appeal and Error.** In reviewing actions against state officials, a court must determine whether an action against individual officials sued in their official capacities is in reality an action against the state and therefore barred by sovereign immunity.

4. **Actions: Parties: Public Officers and Employees: Immunity: Waiver: Damages.** In an action for the recovery of money, the State is the real party in interest. And sovereign immunity—if not waived—bars a claim for money even if the plaintiff has named individual state officials as nominal defendants.

5. **Actions: Public Officers and Employees: Immunity.** To the extent a plaintiff seeks to compel a state official to take actions that require the official to expend public funds, state sovereign immunity bars the suit.

6. **Constitutional Law: Immunity: Public Officers and Employees: Declaratory Judgments: Injunction.** In an action brought under 42 U.S.C. § 1983 (2006), 11th Amendment immunity does not bar an action against a state or state officials for prospective declaratory or injunctive relief.

7. **Public Officers and Employees: Immunity.** State sovereign immunity does not bar an action against state officials to restrain them from performing an affirmative act or to compel them to perform an act they are legally required to do unless the affirmative act would require the officials to expend public funds.

8. **Public Officers and Employees: Immunity: Liability.** If a plaintiff has sued a state official in the official's individual capacity, a court must determine whether qualified immunity shields the state official from civil damages.

9. **____: ____: ____.** Qualified immunity shields state officials in their individual capacities from civil damages if their conduct did not violate a clearly established statutory or constitutional right of which a reasonable person would have known.

10. **Parental Rights.** A parent's right to maintain custody of his or her child is a natural right, subject only to the paramount interest which the public has in protecting the rights of the child.

11. **Constitutional Law: Parental Rights: Due Process.** The fundamental liberty interest of natural parents in the care, custody, and management of their child is afforded due process protection.

12. **Parental Rights.** Even a parent's natural right to the care and custody of a child is limited by the State's power to protect the health and safety of its resident children.

13. **Juvenile Courts: Jurisdiction: Child Custody: Parental Rights.** The State's protective umbrella begins when a juvenile court acquires jurisdiction at the adjudication phase based on the child's present living conditions. The custodial rights of parents normally arise at the dispositional phase.

14. **Parental Rights: Minors: Due Process: Notice.** Procedural due process requires notice to the person whose rights are affected by an adjudication proceeding and a reasonable opportunity to refute or defend against the allegations.

15. **Child Custody: Parental Rights: Marriage: Adoption: Proof.** When a child is born or adopted during a marriage, a court may not properly deprive a biological or adoptive parent of the custody of the minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship or has forfeited that right.

16. **Parent and Child.** Parental rights do not spring full blown from the biological connection between parent and child. They require relationships more enduring.

17. **Parent and Child: Paternity: Proof.** If an unmarried father has custody and an established relationship with his child, a state may not deprive that father of custody without showing that he is an unfit parent.

18. **Constitutional Law: Paternity: Adoption: Proof.** When an unmarried father has established familial ties with his biological child and has provided support, his relationship acquires substantial constitutional protection. Thus, the State may not statutorily eliminate the need for his consent to an adoption.

19. **Paternity: Parental Rights: Minors.** Adjudicated fathers, as a class, can have parental rights at stake in juvenile proceedings.

20. **Due Process: Minors: Notice.** In a juvenile proceeding alleging abuse, neglect, or dependency, due process requires the State to provide notice and an opportunity to be heard to a child's known adjudicated or biological father who is providing substantial and regular financial support for his child.

21. **Constitutional Law: Parent and Child: Child Support.** The fact that an unmarried, biological father has paid his child support obligations is insufficient to

create a fundamental liberty interest in a familial relationship that is entitled to heightened constitutional protection.

22. **Juvenile Courts: Parent and Child: Child Custody.** Unless a known biological father appears and shows a juvenile court that he has shouldered the responsibilities of parenting, in addition to providing financial support, the court is not required to determine that he is an unfit parent before it can place the child with a third party. Nonetheless, consistent with a juvenile court's broad discretion to determine the placement of an adjudicated child that will serve the child's best interests, the court may consider placement with an unmarried, biological father if removal from the child's home is necessary.

23. **Paternity: Notice.** If the State shows that an unmarried, biological father's whereabouts are unknown and that he has not supported his child, then he is not a parent entitled to notice and an opportunity to be heard in a juvenile proceeding involving his child born out of wedlock.

24. ____: ____. Neb. Rev. Stat. §§ 43-263 and 43-265 (Reissue 2008) cannot be constitutionally applied to avoid notifying a known adjudicated or biological father, who has provided financial support to his child, of abuse, neglect, or dependency proceedings involving his child. In that circumstance, the State must comply with the notification procedures that are statutorily required for other noncustodial parents—before the dispositional phase.

25. **Public Officers and Employees: Immunity.** Whether a state official should prevail in a qualified immunity defense depends upon the objective reasonableness of his or her conduct as measured by reference to clearly established law.

26. **Constitutional Law: Courts: Statutes.** Generally, a right cannot be clearly established when the conduct complained of was authorized by statute and no court had decided the issue when the conduct occurred.

27. **Injunction: Damages.** An injunction is an extraordinary remedy that a court should ordinarily not grant except in a clear case where there is actual and substantial injury.

28. ____: ____. A court should not grant an injunction unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice.

Appeal from the District Court for Douglas County: JOSEPH S. TROIA, Judge. Affirmed in part, and in part reversed.

Amy Sherman, of Sherman & Gilner, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and John M. Baker, Special Assistant Attorney General, for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

Connolly, J.

## SUMMARY

Michael E., individually and on behalf of his daughter, Avalyn J., brought this civil rights action under 42 U.S.C. § 1983 (2006). The defendants are the State, the Department of Health and Human Services (the Department), and six of the Department's employees. He alleged that because the defendants failed to notify him of juvenile proceedings regarding Avalyn, they interfered with his and Avalyn's constitutional rights to familial integrity, substantive due process, and equal protection. Michael sued the employees in their official and individual capacities. In addition, he claimed that Neb. Rev. Stat. §§ 43-263 and 43-265 (Reissue 2008) were unconstitutional.

The district court determined that §§ 43-263 and 43-265 were unconstitutional, facially and as applied to Michael. But it concluded that sovereign immunity barred Michael's action against the State, the Department, and the employees in their official capacities. It further determined that the employees, in their individual capacities, were entitled to qualified immunity because they were following unconstitutional statutes, which had not previously been declared unconstitutional. The court dismissed Michael's request for injunctive relief to restrain the State from unlawfully applying the notification statutes.

We will explain our holding with specificity in the following pages, but briefly stated, it is this:

• To the extent that Michael sought monetary damages, the court correctly determined that sovereign immunity barred Michael's claims against the State, the Department, and the Department's employees in their official capacities.

• In a juvenile proceeding alleging abuse, neglect, or dependency, due process requires the State to provide notice and an opportunity to be heard to a child's known, financially supportive adjudicated or biological father.

• The court correctly determined that qualified immunity shielded the Department's employees from liability in their individual capacities because they did not violate a clearly established right.

• The court correctly dismissed Michael's claim for injunctive relief. No reasonable probability existed that the State would again fail to notify him of any future juvenile proceedings after the court granted him shared custody of Avalyn.

## BACKGROUND

### History of Juvenile Proceedings

Avalyn was born out of wedlock in September 2002. Michael and April J. are her biological parents. It is unknown from the pleadings what Michael and April's relationship was before or after Avalyn's birth. At an unspecified date, a court entered a paternity and support decree in a "title IV-D" action. A title IV-D action refers to the Department's authorization to seek a child support order when a party is receiving services under title IV-D of the federal Social Security Act. The court found that Michael was Avalyn's biological father and ordered him to pay child support but did not order visitation. That order is not part of this record.

In 2005, the State took temporary emergency protective custody of Avalyn on two separate occasions after April attempted suicide. In September, the county attorney filed a juvenile petition, seeking an adjudication under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). The county attorney did not give notice to Michael. After April admitted the allegations, the juvenile court placed Avalyn in foster care with her maternal grandmother. Because the grandmother agreed to live with April, the court returned Avalyn to April's home. The disposition order continued this arrangement. The court's adjudication order in September stated that the "'father of child, Michael [E.], to be notified of proceedings, if address is available.'" But the caseworkers did not notify Michael before the disposition hearing. Michael, however, alleged that because he was paying child support through the State, the caseworkers knew or should have known how to contact him.

About 6 months after the disposition, on April 25, 2006, Michael received a letter from the State Foster Care Review Board notifying him of the proceedings. On May 8, he wrote the juvenile court, which allowed Michael to intervene.

After notifying Michael in April 2006, the Department provided services to him to determine whether Avalyn's placement with him and his wife would be in Avalyn's best interests. In October 2006, the court placed Avalyn with Michael and his wife. Later, the State provided mediation services for Michael and April to resolve their custody and visitation disputes. The court continued Avalyn's placement with Michael through November 2007, when the parties stipulated that Avalyn should be placed with April but divide her time evenly between April and Michael.

The defendants alleged that before April 2006, when Michael learned of the juvenile proceedings, he had not tried to establish a relationship with Avalyn or he had acquiesced in April's request that he not do so. They alleged that his only contact with Avalyn "consisted of some birthday and Christmas gifts and court-ordered child support automatically withheld from his paycheck when he was working."

## Procedural History of
## Civil Rights Action

In Michael's § 1983 action, he alleged separate "causes of action." Under three of these headings, he alleged that the defendants interfered with his constitutional right to familial integrity by failing to notify him of Avalyn's status as a ward of the State. He also alleged that the defendants violated his right to equal protection of the law by providing services to April but not to him. He sought a declaration that the State had violated his constitutional rights. For these claims, he sought monetary damages and attorney fees. The six employees whom he sued are the three caseworkers who were assigned to Avalyn's juvenile case at different times and their immediate supervisors.

Michael also claimed that §§ 43-263 and 43-265 were unconstitutional to the extent that they permitted the State to avoid notifying a noncustodial parent of juvenile proceedings involving the parent's child. He sought a temporary and permanent injunction to prohibit the unlawful application of these statutes for himself and for all others similarly situated.

The defendants moved to dismiss Michael's action in its entirety. They alleged that the court lacked subject matter jurisdiction and that Michael had failed to state a claim that entitled him to relief.

The court concluded that the State had not waived its sovereign immunity and that Michael had not alleged that the caseworkers took a deliberate course of conduct not to notify him. It further concluded that Michael's pleadings did not show he had an established relationship with Avalyn. The court reasoned that even if Michael had been notified and appeared, his allegations did not show that the juvenile court would have placed Avalyn in his custody. Because the State had not waived its sovereign immunity, the court dismissed Michael's claims seeking monetary damages and a declaration that the defendants had violated his constitutional rights.

Later, however, the court ruled that Michael had alleged sufficient facts to state a claim that §§ 43-263 and 43-265 were unconstitutional. It concluded that the juvenile court had found Michael was a fit parent for custody and that he therefore had a due process right to notice of the proceedings. The court found that because of the paternity decree, the Department knew Michael was Avalyn's father and knew his address. It found that this knowledge was illustrated by the Department's notice to Michael in April 2006.

Although the Department had technically complied with the statutes, the court concluded that §§ 43-263 and 43-265 were unconstitutional, facially and as applied. It reasoned that the statutes cannot constitutionally eliminate notification of juvenile proceedings to a noncustodial parent. But because the State had not waived its sovereign immunity, the court dismissed Michael's requests for temporary and permanent injunctions to restrain the State from unlawfully applying these statutes against him and all other similarly situated parents.

Michael then moved for summary judgment, which motion the court overruled. It concluded that the Department's employees were entitled to sovereign immunity in their official capacities. It further found that in their individual capacities, qualified immunity shielded them because their conduct was

merely negligent in following the statutes, which had not been declared unconstitutional. Later, the court issued an order dismissing Michael's action.

## ASSIGNMENTS OF ERROR

Michael assigns, restated and renumbered, that the court erred in (1) determining that the defendants were immune from liability; (2) failing to determine that an exception to immunity applied; (3) determining that he did not allege a violation of any constitutionally protected right; (4) dismissing the State and the Department from his claims regarding the constitutionality of §§ 43-263 and 43-265; (5) failing to sustain his motion for summary judgment on these two causes of action; (6) failing to issue an injunction; (7) failing to issue a judgment for him on his claims that §§ 43-263 and 43-265 were unconstitutional; and (8) dismissing his action.

## STANDARD OF REVIEW

[1] We review de novo whether a party is entitled to dismissal of a claim based on federal or state immunity, drawing all reasonable inferences for the nonmoving party.[1]

## ANALYSIS

Michael contends that the State unlawfully interfered with his and Avalyn's fundamental right to each other's companionship and his fundamental right to the custody and control of his child. He argues that the state employees, whom he sued in their official and individual capacities, are not entitled to qualified immunity because they knew or should have known that their actions violated a clearly established constitutional right to familial integrity.

Additionally, Michael contends that sovereign immunity does not bar his claim against the State and the Department because (1) a plaintiff can sue local governments for constitutional

---

[1] See, *Findlay v. Lendermon*, No. 12-3881, 2013 WL 2992392 (7th Cir. June 14, 2013); *Bailey v. Pataki*, 708 F.3d 391 (2d Cir. 2013); *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013); *South Carolina Wildlife Federation v. Limehouse*, 549 F.3d 324 (4th Cir. 2008); *Holz v. Nenana City Public School Dist.*, 347 F.3d 1176 (9th Cir. 2003); *McKinney v. Okoye*, 282 Neb. 880, 806 N.W.2d 571 (2011).

deprivations caused by their employees' widespread, persistent pattern of unconstitutional misconduct and (2) sovereign immunity does not bar a claim for prospective declaratory or injunctive relief.

The State, of course, views the matter differently. It contends that the State of Nebraska, its agencies, and its officials—sued in their official capacities—are immune from suit under 42 U.S.C. § 1983. It argues that sovereign immunity bars such suits and that the State has not waived its immunity.

Regarding Michael's claims against the employees in their individual capacities, the State contends that qualified immunity shields them from liability. The State argues that they are immune because Michael has not alleged that any state employee purposefully, willfully, or deliberately failed to notify him of the juvenile court proceedings involving Avalyn. The State contends that the caseworkers' conduct did not constitute a civil rights violation because when they failed to notify Michael, they reasonably believed that they were following constitutional statutes.

### Sovereign Immunity Principles

[2-5] Because Michael's claims fall under 42 U.S.C. § 1983, we follow federal precedent.[2] Contrary to Michael's argument, his action is not against a local government. A suit against a state agency is a suit against the State and is subject to sovereign immunity.[3] In reviewing actions against state officials, a court must determine whether an action against individual officials sued in their official capacities is in reality an action against the state and therefore barred by sovereign immunity.[4] In an action for the recovery of money, the State is the real party in interest. And sovereign immunity—if not waived—bars a claim for money even if the plaintiff has named individual state officials as nominal defendants.[5] In addition, to the extent a plaintiff seeks to compel a state official to take actions

---

[2] See, e.g., *Cole v. Isherwood*, 271 Neb. 684, 716 N.W.2d 36 (2006).

[3] See *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010).

[4] *Id*.

[5] See *id*.

that require the official to expend public funds, state sovereign immunity bars the suit.[6]

[6,7] But in an action brought under 42 U.S.C. § 1983, 11th Amendment immunity does not bar an action against a state or state officials for prospective declaratory or injunctive relief.[7] Similarly, state sovereign immunity does not bar an action against state officials to restrain them from performing an affirmative act or to compel them to perform an act they are legally required to do unless the affirmative act would require the officials to expend public funds.[8]

[8,9] But if a plaintiff has sued a state official in the official's individual capacity, a court must determine whether qualified immunity shields the state official from civil damages. Qualified immunity shields state officials in their individual capacities from civil damages if their conduct did not violate a clearly established statutory or constitutional right of which a reasonable person would have known.[9]

Applying these principles, we agree with the State that sovereign immunity bars Michael's claims—to the extent that Michael seeks monetary damages—against the State, the Department, and its employees in their official capacities. But Michael also sought a declaration that the State had violated his constitutional rights by failing to give him notice and an opportunity to be heard in the juvenile proceedings. And he sought an injunction to restrain state officials from failing to notify him in the future. Sovereign immunity did not bar those claims against state officials, and the court erred in dismissing them from the suit on Michael's declaratory and injunctive relief claims. We now turn to the merits of Michael's claims that §§ 43-263 and 43-265 are unconstitutional to the extent

---

[6] See, *id*.; *Ashby v. State*, 279 Neb. 509, 779 N.W.2d 343 (2010).

[7] See, *Frew v. Hawkins*, 540 U.S. 431, 124 S. Ct. 899, 157 L. Ed. 2d 855 (2004); *Doe, supra* note 3.

[8] See, *Project Extra Mile v. Nebraska Liquor Control Comm*., 283 Neb. 379, 810 N.W.2d 149 (2012); *Doe, supra* note 3.

[9] See, *Ashby, supra* note 6; *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 752 (1999), *disapproved on other grounds, Simon v. City of Omaha*, 267 Neb. 718, 677 N.W.2d 129 (2004).

they permitted the State to avoid notifying him of the juvenile proceedings and that he was entitled to injunctive relief to prohibit this unlawful application in the future.

### DUE PROCESS REQUIRED
#### NOTICE TO MICHAEL

[10,11] A parent's right to maintain custody of his or her child is a natural right, subject only to the paramount interest which the public has in protecting the rights of the child.[10] The fundamental liberty interest of natural parents in the care, custody, and management of their child is afforded due process protection.[11]

[12,13] Yet, even a parent's natural right to the care and custody of a child is limited by the State's power to protect the health and safety of its resident children.[12] The State's protective umbrella begins when a juvenile court acquires jurisdiction at the adjudication phase based on the child's present living conditions. The custodial rights of parents normally arise at the dispositional phase.[13]

[14] This does not mean, however, that a parent is without rights at the adjudication phase. Procedural due process requires notice to the person whose rights are affected by an adjudication proceeding and a reasonable opportunity to refute or defend against the allegations.[14] And the Nebraska Court of Appeals has extended the right to notice of an adjudication proceeding to a noncustodial parent.[15] "If a parent is not accorded

---

[10] *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004).

[11] *Id.*

[12] See *Cornhusker Christian Ch. Home v. Dept. of Soc. Servs.*, 227 Neb. 94, 416 N.W.2d 551 (1987).

[13] See, *In re Interest of Devin W. et al.*, 270 Neb. 640, 707 N.W.2d 758 (2005); *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996).

[14] See *In re Interest of Mainor T. & Estela T., supra* note 10.

[15] See *In re Interest of B.J.M. et al.*, 1 Neb. App. 851, 510 N.W.2d 418 (1993) (citing *In re Interest of L. V.*, 240 Neb. 404, 482 N.W.2d 250 (1992)). See, also, *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

his or her due process rights, the parent can readily appear and ask the court to terminate jurisdiction upon a showing that the child is no longer in need of protection."[16]

[15] These rules clearly apply when a child is born or adopted during a marriage. "A court may not properly deprive a biological or adoptive parent of the custody of the minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship or has forfeited that right . . . ."[17] When a juvenile court does not return an adjudicated child to his or her custodial parent at the dispositional stage, it must consider placement with the child's noncustodial parent before placing the child with an unrelated third party.[18]

But in those cases, the court was dealing with children who were born during the noncustodial parent's marriage, even though the parents were separated or divorced when the State filed a juvenile petition. We have not previously decided in a juvenile case whether an unmarried, biological father should have an opportunity to participate in juvenile proceedings. U.S. Supreme Court precedent guides us in that determination.

[16] "'*Parental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring.*'"[19] In cases dealing with an unmarried father's right to object to an adoption, the U.S. Supreme Court has drawn a demarcation between "a mere biological parent" and "a natural father who has played a substantial role in rearing his child"[20]:

---

[16] *In re Interest of Amanda H.*, 4 Neb. App. 293, 302, 542 N.W.2d 79, 86 (1996).

[17] *In re Interest of Amber G. et al., supra* note 13, 250 Neb. at 982, 554 N.W.2d at 149.

[18] See *id.*

[19] *Lehr v. Robertson*, 463 U.S. 248, 260, 103 S. Ct. 2985, 77 L. Ed. 2d 614 (1983) (emphasis in original) (quoting *Caban v. Mohammed*, 441 U.S. 380, 99 S. Ct. 1760, 60 L. Ed. 2d 297 (1979)).

[20] *Id.*, 463 U.S. at 262 n.18. Accord *In re Adoption of Corbin J.*, 278 Neb. 1057, 775 N.W.2d 404 (2009).

When an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," . . . his interest in personal contact with his child acquires substantial protection under the Due Process Clause. At that point it may be said that he "act[s] as a father toward his children." . . . But the mere existence of a biological link does not merit equivalent constitutional protection. The actions of judges neither create nor sever genetic bonds. "[T]he importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in 'promot[ing] a way of life' through the instruction of children . . . as well as from the fact of blood relationship." . . .

The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. If he fails to do so, the Federal Constitution will not automatically compel a State to listen to his opinion of where the child's best interests lie.[21]

[17,18] Under these principles, the Supreme Court has held that if an unmarried father has custody and an established relationship with his child, a state may not deprive that father of custody without showing that he is an unfit parent.[22] And we have held that when an unmarried father has established familial ties with his biological child and has provided support, his relationship acquires substantial constitutional protection. Thus, the State may not statutorily eliminate the need for his consent to an adoption.[23]

---

[21] *Id.*, 463 U.S. at 261-62.

[22] See *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972).

[23] *In re Adoption of Corbin J.*, *supra* note 20.

But the State argues that because Michael's allegations failed to show an established familial relationship, he did not allege a violation of his right to familial integrity. As stated, the pleadings do not discuss Michael and April's relationship before or after Avalyn's birth. But Michael's declaratory judgment claim presents a procedural due process question that exists even if he did not have a familial relationship with his child. We must decide what process is due to an adjudicated father in an abuse, neglect, or dependency proceeding when the State's officials know only that a noncustodial adjudicated father exists and that he has provided regular and substantial financial support to his child.

[19] First, we point out the obvious. Michael is not a putative father; he is Avalyn's adjudicated father. And we have held that Nebraska's adoption statutes eliminating the need for a putative father's consent to an adoption when he has not registered in the State's putative father registry do not apply to an adjudicated father.[24] We have also held that depending on the circumstances, unmarried, biological fathers may obtain custody or visitation rights with their children.[25] So adjudicated fathers, as a class, can have parental rights at stake in juvenile proceedings.

These potential rights raise a concern that unless an adjudicated or biological father has an opportunity to be heard, a juvenile court may lack crucial information for determining the constitutional protection afforded to the father's interests. For example, the court may not know whether the father has acknowledged paternity of his child and provided regular and substantial financial support, lived with the child before separating from the mother, shouldered parental responsibilities, had significant visitation with the child, or been hindered in his efforts to have contacts with his child.

---

[24] See *In re Adoption of Jaden M.*, 272 Neb. 789, 725 N.W.2d 410 (2006).

[25] See, *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004); *White v. Mertens*, 225 Neb. 241, 404 N.W.2d 410 (1987); *State ex rel. Laughlin v. Hugelman*, 219 Neb. 254, 361 N.W.2d 581 (1985).

This lack of information creates a substantial risk that the State will erroneously deprive an unmarried father of a protected liberty interest in a relationship with his child.[26] Conversely, the burden on the State to notify a known adjudicated or biological father is low when compared to the parental rights potentially at stake.[27]

[20,21] So we conclude that in a juvenile proceeding alleging abuse, neglect, or dependency, due process requires the State to provide notice and an opportunity to be heard to a child's known adjudicated or biological father who is providing substantial and regular financial support for his child. But we reject the argument that unless the State shows that an unmarried, noncustodial father is an unfit parent, a juvenile court must always place his biological child in his custody before considering custody with an unrelated third party. The mere opportunity to present facts relevant to the father's relationship with the child and his fitness for custody does not create a right to custody. And the fact that an unmarried, biological father has paid his child support obligations is insufficient to create a fundamental liberty interest in a familial relationship that is entitled to heightened constitutional protection.

For example, in *Quilloin v. Walcott*,[28] the Supreme Court held that a state court did not violate an unmarried father's due process rights by determining that a stepfather's adoption of his children was in their best interests. The unmarried father did not legally establish his paternity of the children for an 11-year period before the adoption petition was filed. So due process did not require the court to find that the biological father was an unfit parent before approving the adoption. And the biological father's occasional visits and support obligations did not affect the result:

> Although appellant was subject, for the years prior to these proceedings, to essentially the same child-support obligation as a married father would have had, . . . he has

---

[26] See, e.g., *State v. Norman*, 282 Neb. 990, 808 N.W.2d 48 (2012).

[27] See *Chase v. Neth*, 269 Neb. 882, 697 N.W.2d 675 (2005).

[28] *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978).

never exercised actual or legal custody over his child, and thus has never shouldered any significant responsibility with respect to the daily supervision, education, protection, or care of the child.[29]

[22] Unless a known biological father appears and shows a juvenile court that he has shouldered the responsibilities of parenting, in addition to providing financial support, the court is not required to determine that he is an unfit parent before it can place the child with a third party. Nonetheless, consistent with a juvenile court's broad discretion to determine the placement of an adjudicated child that will serve the child's best interests,[30] the court may consider placement with an unmarried, biological father if removal from the child's home is necessary.

[23] But we disagree with the district court that §§ 43-263 and 43-265 are facially unconstitutional. If the State shows that an unmarried, biological father's whereabouts are unknown and that he has not supported his child, then he is not a parent entitled to notice and an opportunity to be heard in a juvenile proceeding involving his child born out of wedlock.

[24] We agree with the court, however, that §§ 43-263 and 43-265 cannot be constitutionally applied to avoid notifying a known adjudicated or biological father, who has provided regular and substantial financial support to his child, of abuse, neglect, or dependency proceedings involving his child. In that circumstance, the State must comply with the notification procedures that are statutorily required for other noncustodial parents—before the dispositional phase. But we emphasize that due process is satisfied by notice and an opportunity to be heard. If an unmarried, biological father does not grasp that opportunity and show a familial relationship, the court need not delay acting in the child's best interests.

Despite our conclusion that due process required the State to give Michael notice and an opportunity to be heard, the State argues that the Department's employees are immune from Michael's claim for monetary damages.

---

[29] *Id.*, 434 U.S. at 256.

[30] *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012).

MICHAEL'S RIGHT TO NOTICE AND
OPPORTUNITY TO BE HEARD WAS
NOT CLEARLY ESTABLISHED

Because we conclude that the State's procedures did not comply with due process, we consider whether qualified immunity shielded the Department's employees, in their individual capacities, from civil damages.

[25] Whether a state official should prevail in a qualified immunity defense depends upon the objective reasonableness of his or her conduct as measured by reference to clearly established law.[31]

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.[32]

[26] As the district court concluded, §§ 43-263 and 43-265 require the State to give notice only to the custodial parent. And before this case, the Court of Appeals had judicially extended the notification requirement, on due process grounds, to a noncustodial parent only when the child was born during the parents' marriage. Nebraska courts had not decided whether an adjudicated father with no previous custody rights arising from a marital relationship was entitled to notice. Generally, a right cannot be clearly established when the conduct complained of was authorized by statute and no court had decided the issue when the conduct occurred.[33]

But Michael claims the Department did not follow its own regulations. He cites the Department's regulations requiring caseworkers to make reasonable efforts to notify a noncustodial parent when a child has been placed in an out-of-home

---

[31] See *Williams v. Baird*, 273 Neb. 977, 735 N.W.2d 383 (2007).

[32] *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) (citation omitted).

[33] See *Shearer, supra* note 9 (Connolly, J., concurring; Miller-Lerman, J., joins) (citing *Duncan v. Gunter*, 15 F.3d 989 (10th Cir. 1994)).

setting.[34] Additionally, if the Department determines that intervention is necessary, a caseworker must forward to the county attorney the names of each family member residing in the home and the name and address of any absent biological or legal parent.[35]

The juvenile court, however, did not place Avalyn in an out-of-home setting. The court placed her with her maternal grandmother, who agreed to live with April and Avalyn at their home. Michael did not include the county attorney as a party to this action, so his suggestion that the caseworkers did not provide his information to the county attorney is speculative.

But under the regulations, the requirement of notice to a noncustodial parent clearly hinged upon an out-of-home placement. And we do not read these regulations as putting temporary, emergency custody of a child on the same footing as an out-of-home placement. Even if that were true, the caseworkers' failure to interpret the regulations in that manner would be at most negligent conduct, not a constitutional violation.[36] The district court correctly determined that the Department employees' qualified immunity defense shielded them from liability for civil damages.

## Michael Was Not Entitled to Injunctive Relief

Michael argues that he was entitled to an injunction to enjoin the State and its officers from applying §§ 42-263 and 42-265 to avoid notifying him or other noncustodial biological fathers of juvenile proceedings involving their children. But we agree with the State that an injunction is inappropriate in this case.

[27,28] An injunction is an extraordinary remedy that a court should ordinarily not grant except in a clear case where there is an actual and substantial injury.[37] And a court should

---

[34] See 390 Neb. Admin. Code, ch. 7, § 001.04 (1998).

[35] See 390 Neb. Admin. Code, ch. 8, § 001.05 (2000).

[36] See *Ashby, supra* note 6.

[37] *Bock v. Dalbey*, 283 Neb. 994, 815 N.W.2d 530 (2012).

not grant an injunction unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice.[38]

Michael now has shared custody of Avalyn, and he limited his claim for injunctive relief to the unlawful application of the statutes to a *noncustodial* biological father. He is no longer a noncustodial biological father. So he is no longer in any danger of injury, and this is not a class action filed on behalf of other noncustodial biological fathers. The court did not err in denying injunctive relief.

## CONCLUSION

We conclude that the district court correctly determined that sovereign immunity barred Michael's claims against the State, the Department, and its employees in their official capacities, to the extent that Michael seeks monetary damages. But sovereign immunity did not bar Michael's claims for declaratory and injunctive relief, and the court erred in dismissing state officials from the suit regarding those claims.

We reverse the court's determination that §§ 43-263 and 43-265 are facially unconstitutional. But we conclude that in a juvenile proceeding alleging abuse, neglect, or dependency, due process requires the State to provide notice and an opportunity to be heard to a child's known adjudicated or biological father who is providing substantial and regular financial support for his child. Sections 43-263 and 43-265 cannot be constitutionally applied to avoid this notification.

We conclude that Michael was not entitled to injunctive relief to enjoin the State and its officers from unlawfully applying §§ 43-263 and 43-265 to avoid notifying him of any future juvenile proceedings. And we conclude that the state employees who failed to notify Michael of the juvenile proceedings involving Avalyn are shielded from liability for civil damages because Michael's right to notification was not clearly established when their conduct occurred.

AFFIRMED IN PART, AND IN PART REVERSED.

---

[38] *Id*.