on the processing of paperwork and return of her license, in the absence of being specifically told, was not sufficient to warrant the giving of the instruction. We affirm the judgment of the district court, which affirmed the judgment of the county court for Platte County.

AFFIRMED.

———————————

Anthony K. and Arva K., individually and
as guardians and next friends on behalf
of their minor children, Ashley K.
et al., appellants, v. State of
Nebraska et al., appellees.
___ N.W.2d ___

Filed November 21, 2014.    No. S-13-446.

1. **Jurisdiction: Appeal and Error.** The question of jurisdiction is a question of law, which an appellate court resolves independently of the trial court.
2. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.
3. **Motions to Dismiss: Immunity: Appeal and Error.** An appellate court reviews de novo whether a party is entitled to dismissal of a claim based on federal or state immunity, drawing all reasonable inferences for the nonmoving party.
4. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
5. **Constitutional Law: States: Immunity.** The immunity of states from suit is a fundamental aspect of the sovereignty which the states enjoyed before ratification of the federal Constitution and which they retain today.
6. **Actions: States.** It is inherent in the nature of sovereignty for a state not to be amenable to the suit of an individual without its consent.
7. **Constitutional Law: Legislature: Immunity: Waiver.** Neb. Const. art. V, § 22, provides that the State may sue and be sued and that the Legislature shall provide by law in what manner and in what courts suits shall be brought. The State is permitted to lay its sovereignty aside and consent to be sued on such terms and conditions as the Legislature may prescribe.
8. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Douglas County: J Russell Derr, Judge. Affirmed.

Amy Sherman, of Sherman & Gilner, P.C., L.L.O., for appellants.

Jon Bruning, Attorney General, and John L. Jelkin for appellees.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Miller-Lerman, JJ., and Bishop, Judge.

Wright, J.

## I. NATURE OF CASE

This action was brought under 42 U.S.C. § 1983 (2012) by Anthony K. and Arva K., individually and as guardians and next friends on behalf of their seven minor children. The plaintiffs sued the State of Nebraska, the Department of Health and Human Services (DHHS), 18 DHHS employees in their official and individual capacities, and the children's guardian ad litem. The plaintiffs sought general and special damages for a violation of their constitutionally protected rights to familial integrity, due process, and equal protection. They challenged the constitutionality of Neb. Rev. Stat. §§ 43-283.01 and 43-1312 (Cum. Supp. 2012) and asked the Douglas County District Court to temporarily and permanently enjoin the application of the statutes in the State of Nebraska and strike them down. This is the first of two related cases filed by the plaintiffs.

Upon the defendants' motion to dismiss, the district court concluded that only the State had been properly served and it dismissed all the remaining defendants for lack of proper service. At that time, the court also determined that the State was entitled to sovereign immunity as to the plaintiffs' § 1983 claims that requested monetary damages. As to the plaintiffs' remaining causes of action against the State, the court sustained the State's motion for summary judgment and dismissed the plaintiffs' complaint. For the reasons discussed below, we affirm the dismissal of the plaintiffs' complaint.

## II. SCOPE OF REVIEW

[1] The question of jurisdiction is a question of law, which an appellate court resolves independently of the trial court.

*In re Estate of McKillip*, 284 Neb. 367, 820 N.W.2d 868 (2012).

[2] A district court's grant of a motion to dismiss is reviewed de novo. *Estate of Teague v. Crossroads Co-op Assn.*, 286 Neb. 1, 834 N.W.2d 236 (2013).

[3] We review de novo whether a party is entitled to dismissal of a claim based on federal or state immunity, drawing all reasonable inferences for the nonmoving party. *Michael E. v. State*, 286 Neb. 532, 839 N.W.2d 542 (2013).

[4] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Cartwright v. State*, 286 Neb. 431, 837 N.W.2d 521 (2013).

## III. FACTS

### 1. Juvenile Case

On February 12, 2000, the plaintiffs left their oldest three minor children, Ashley K.; Anthony K., Jr. (Anthony Jr.); and Ali K., unattended for 1 to 2 hours. Anthony notified authorities that the children had been left alone. Following the incident, the children were removed from the family home by police. During the pendency of the juvenile case involving Ashley, Anthony Jr., and Ali, four other children were born to the plaintiffs. None of the other children were removed from the home and were not the subjects of the juvenile case.

On February 14, 2000, a petition was filed in the Lancaster County Separate Juvenile Court alleging that Ashley, Anthony Jr., and Ali lacked proper parental care by reason of the fault or habits of the plaintiffs. Richard Bollerup was appointed as the guardian ad litem for the minor children. Eighteen DHHS caseworkers, case managers, or administrators were involved in the case at various times over the next 9 years.

As part of the reunification plan, the court ordered Anthony to undergo intensive outpatient therapy for substance abuse, ordered the family to participate in family therapy, and ordered the plaintiffs to maintain a safe and stable home for the

children. The plaintiffs were granted visitation three times a week, which included overnight visits.

On May 25, 2000, the children were placed back in the plaintiffs' home. Initial case closure was scheduled for April 2001. In March 2001, the plaintiffs were evicted from their residence. Arva temporarily separated from Anthony and moved into a city mission in Lincoln, Nebraska, with the children. DHHS staff reported at this time that the plaintiffs were not participating in services consistently, Ashley had been late or absent from school, and Anthony had not entered alcohol treatment. On March 28, a hearing was held and the juvenile court ordered that the three oldest children be removed from the home and that Anthony be subject to random alcohol screenings. The new goal for case closure was set for October 2002, but was later extended to April 2003.

The children continued to remain in out-of-home placement due to the "'lack of compliance with the plan as ordered by the Court.'" This included Anthony's failure to show completion of alcohol treatment and the plaintiffs' continued need to further demonstrate stability in their living situation. Case closure was extended to September 2003, then to February and December 2004, and finally to March 2005. Each time, the stated reasons were because Anthony failed to show completion of substance abuse treatment and the plaintiffs failed to show a stable living situation.

The plaintiffs attempted to complete the requirements DHHS set forth in its plan for reunification. Anthony completed an alcohol treatment program, but could not produce a certificate for the court because he could not afford to pay the final bill. The continued reasons for out-of-home placement of the three minor children included Anthony's failing to produce the certificate of completion for his alcohol dependency program and neither Anthony's nor Arva's having a valid driver's license, as well as the plaintiffs' not having a big enough car for all their children, not participating in therapy to DHHS' satisfaction, and not complying with the plan for reunification. Anthony continually tested negative for drugs

and alcohol, although he was cited for driving while under the influence.

In July 2005, the plaintiffs attended a meeting with Todd Reckling and Chris Peterson, administrators at DHHS. At the meeting, Reckling and Peterson apologized for the length of time for the case and informed the plaintiffs that they needed to act quickly to reunify their family or the Lancaster County Attorney was going to file a motion to terminate their parental rights. On July 14, the Lancaster County Attorney filed a motion to terminate the plaintiffs' parental rights. DHHS employees recommended that the children be returned to the family home.

In 2006, a Foster Care Review Board report recommended reunification, noting that "'case manager turnover, changes in visitation schedules and in the permanency objective being sought appear[ed] to have been more detrimental to the children than if reunification had occurred'" and that those issues had "'as much impact on the children's prolonged time in care as the parent's lack of progress.'" However, it also noted that the plaintiffs' lack of participation in services had contributed to the children's remaining in out-of-home placement.

In 2006, Ashley, Anthony Jr., and Ali were sent to South Carolina to live with their grandparents. The plaintiffs initially agreed to a guardianship with the grandparents, but later did not agree to the guardianship, stating they were pressured into agreeing to it. DHHS staff advised the plaintiffs at that time that DHHS would seek to terminate their parental rights.

On March 14, 2008, DHHS noted that the guardianship with the grandparents was no longer the permanency objective and requested that the county attorney refile for termination of parental rights as to Ashley, Anthony Jr., and Ali. The juvenile court found that grounds for termination did not exist and ordered the children returned to their parents and the case closed. The plaintiffs and their four other children moved to South Carolina to be closer to the three oldest children. In November 2008, Ashley, Anthony Jr., and Ali were formally placed in the care of the plaintiffs.

## 2. Procedural History

The plaintiffs filed the present lawsuit on February 5, 2010. In it, they named as defendants the State; DHHS; 18 DHHS employees who were assigned at various times to Ashley, Anthony Jr., and Ali's juvenile case as caseworkers, case managers, or administrators; and the children's guardian ad litem. The case was brought pursuant to 42 U.S.C. § 1983. In the complaint, they alleged six "causes of action." Those were (1) general violations of the plaintiffs' constitutional rights, including familial integrity, due process, and equal protection; (2) violation of the plaintiffs' constitutionally protected right to familial integrity, because reasonable efforts were not made by DHHS to reunify the family; (3) violation of equal protection, because the plaintiffs had to comply with arbitrary requirements established by DHHS before they were reunited as a family; (4) facial challenge of § 43-283.01, which requires reasonable efforts to preserve and reunify the family; (5) as applied challenge of § 43-283.01; and (6) as applied challenge of § 43-1312, which requires a plan or permanency plan for children placed in foster care. The plaintiffs requested general and special damages for the first three causes of action and temporary and permanent injunctions for the latter three causes of action.

On April 22, 2010, the plaintiffs filed 18 praecipes for summons with the clerk of the district court for service of summons upon the DHHS employees at DHHS. The plaintiffs filed a praecipe for summons via certified mail for service upon DHHS at 301 Centennial Mall South, Lincoln, Nebraska 68509, and a praecipe for service upon Attorney General Jon Bruning at 2115 State Capitol, Lincoln, Nebraska 68509. They were unable to locate the guardian ad litem and moved for alternative service. The record is unclear whether the motion for alternative service was sustained or overruled, but there is no indication that the guardian ad litem was ever served in this case, and he did not enter an appearance.

On May 3, 2010, the certified mail for DHHS and the DHHS employees was received and signed for at DHHS. The certified mail receipts were signed for by John Hayden, a DHHS employee whose duty was to sign for and receive all

certified mail addressed to DHHS. Hayden did not conduct an investigation whether each individual named on the certified mail was actually an employee of DHHS, and he had no personal knowledge whether the named individual actually received the certified mail for which he had signed a receipt. Hayden was not an agent for any of the DHHS employees, did not reside with them, and was not one of their family members.

On May 3, 2010, only 3 of the 18 DHHS employees, Kee-Sha Adams-Parks, Charlie Bennett, and Reckling, were still employed by DHHS. Adams-Parks, Bennett, and Reckling did not receive the summons and did not know they had been sued in their individual capacities.

On June 3, 2010, the State moved to dismiss all of the State defendants, including the State, DHHS, and the DHHS employees, based on lack of subject matter jurisdiction, lack of personal jurisdiction, lack of proper service of process, and failure to state a claim upon which relief could be granted.

On January 7, 2011, the district court sustained the motion to dismiss the State on causes of action one and two. It sustained the motion to dismiss DHHS and the DHHS employees in their official capacities due to lack of proper service. It sustained the motion to dismiss all the DHHS employees in their individual capacities (except Adams-Parks, Bennett, and Reckling) because they were no longer employees at DHHS.

On January 25, 2011, the district court supplemented its previous order. It determined the State was protected from suit by sovereign immunity. It found that the State and DHHS could not be liable for monetary damages under 42 U.S.C. § 1983 when the State had not waived its immunity as a sovereign. It dismissed causes of action one and two as to the State. It overruled the State's motion to dismiss as to the plaintiffs' third through sixth causes of action.

The district court then addressed DHHS' and the DHHS employees' motion to dismiss for lack of proper service. It determined it lacked jurisdiction over DHHS and the DHHS employees in their official capacities, because the plaintiffs failed to properly serve them. It concluded that the plaintiffs were required to send a summons for DHHS and each

of the DHHS employees to the Attorney General in order to gain jurisdiction over them as required by Neb. Rev. Stat. § 25-510.02 (Cum. Supp. 2014). It concluded that because the plaintiffs served only the Attorney General at his office, only the State had been properly served. Because the court lacked jurisdiction, it sustained the motion to dismiss for DHHS and the DHHS employees in their official capacities.

The district court found that it lacked jurisdiction over 15 of the DHHS employees in their individual capacities, because they no longer worked for DHHS as of May 3, 2010, the date the summons were received at DHHS. Because Hayden, the DHHS employee who signed the certified mail receipts, had no personal knowledge whether the DHHS employees named in the plaintiffs' complaint still worked at DHHS, was not a member of their personal households, did not reside with them, and had not been appointed or otherwise designated as an agent to receive personal mail for them, service by certified mail at DHHS was not proper. It dismissed the 15 DHHS employees in their individual capacities who no longer worked at DHHS. But the court withheld determination on Adams-Parks, Bennett, and Reckling pending a hearing to determine if certified mail sent to DHHS was reasonably calculated to provide them with notice that they had been sued in their individual capacities. See *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010).

At this point, the remaining defendants were the State as to the third through sixth causes of action and Adams-Parks, Bennett, and Reckling in their individual capacities.

On June 27, 2011, the district court held a hearing to determine whether the three remaining DHHS employees had been properly served in their individual capacities. The court found that the method the plaintiffs used did not properly serve Adams-Parks, Bennett, and Reckling and was not reasonably calculated to notify them that they had been sued in their individual capacities. The court dismissed Adams-Parks, Bennett, and Reckling. At this point, only the State remained as a defendant as to causes of action three through six.

On October 31, 2012, the State moved for summary judgment on causes of action three through six. Those issues

included whether the plaintiffs had standing to challenge the constitutionality of §§ 43-283.01 and 43-1312 and whether these issues were moot. The State argued that because the plaintiffs no longer resided in Nebraska and were no longer under the jurisdiction of DHHS, they therefore lacked standing to challenge the constitutionality of the statutes. In the alternative, the State argued the issues were moot.

The district court sustained the State's motion for summary judgment. It again held that the State had not waived its sovereign immunity from suit under 42 U.S.C. § 1983 and could not be liable to the plaintiffs for monetary damages. It concluded that the plaintiffs lacked standing to challenge the constitutionality of §§ 43-283.01 and 43-1312, because they were not currently domiciled in Nebraska and had no intention of returning to Nebraska. As such, they had no personal stake in the outcome of their constitutional challenge. The court also concluded that the issues were moot and that the plaintiffs failed to show the likelihood of a similar case arising in the future in which the juvenile court would be unable to address the situation. It dismissed the plaintiffs' third through sixth causes of action against the State.

On May 17, 2013, the plaintiffs filed this timely appeal. We moved the case to our docket on our own motion. See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

## IV. ASSIGNMENTS OF ERROR

The plaintiffs assign that the district court erred in (1) granting DHHS' and the DHHS employees' motion to dismiss on the basis of failure to properly serve, (2) finding that the State was entitled to sovereign immunity, (3) failing to find any exception to immunity protection, and (4) finding that they lacked standing to challenge the constitutionality of two statutes and that the issues were moot.

## V. ANALYSIS

### 1. DHHS and DHHS Employees' Motion to Dismiss

We first consider whether DHHS and the DHHS employees in their official capacities were properly served and then

discuss service upon the DHHS employees in their individual capacities.

### (a) Service on DHHS and DHHS
### Employees in Their
### Official Capacities

Section 25-510.02 provides in part:

> (1) The State of Nebraska, any state agency as defined in section 81-8,210, and any employee of the state as defined in section 81-8,210 sued in an official capacity may be served by leaving the summons at the office of the Attorney General with the Attorney General, deputy attorney general, or someone designated in writing by the Attorney General, or by certified mail or designated delivery service addressed to the office of the Attorney General.

It is undisputed that the plaintiffs properly served the State by serving summons on the Attorney General by certified mail. The plaintiffs argue that by properly serving the State at the Attorney General's office, they also satisfied the statutory requirements to serve DHHS and the DHHS employees in their official capacities. The plaintiffs claim that service of one summons and one complaint on the Attorney General was sufficient to serve the State, DHHS, and the DHHS employees in their official capacities, because the statute does not require that the summons list each separately named defendant. They claim that serving the Attorney General with the complaint was sufficient notice to the State, because all the defendants were distinctly named in the complaint. And they assert that including each defendant's name in the summons would only duplicate the notice the State received. We disagree.

The plaintiffs were required to send a separate summons and complaint to the Attorney General for each party to be served. The purpose of § 25-510.02 is to give the State, its agencies, and its employees "adequate notice of the case against it" and to "eliminate ineffectual service." See *Ray v. Nebraska Crime Victim's Reparations Comm.*, 1 Neb. App. 130, 133, 487 N.W.2d 590, 592 (1992). Such purposes would not be served

if a single summons could be served on the Attorney General
no matter how many State agencies or State employees were
being sued. Serving the Attorney General without naming the
parties to be served would require the State to ascertain parties
in the lawsuit and would thereby place an unreasonable bur-
den on the State to determine which of its numerous depart-
ments or agencies or which of its thousands of employees
were being sued. Additionally, requiring separate summons
for each party served through the Attorney General is consist-
ent with Neb. Rev. Stat. § 25-502.01 (Reissue 2008), which
requires a plaintiff to file the name and address "of each party
to be served" with the clerk of the court and state "the manner
of service for each party."

In order to properly serve DHHS and the 18 DHHS employ-
ees in their official capacities, the plaintiffs had to request a
separate summons and complaint for each defendant and send
all the summonses and complaints to the Attorney General.
The plaintiffs did not do so. They served a single summons on
Attorney General Bruning via certified mail at his office in the
State Capitol. The summons was addressed only to Bruning
as the Attorney General and did not list DHHS or any of the
DHHS employees. No summons or complaint was served on
the Attorney General for any of those defendants as required
by § 25-502.01. Indeed, the proof of service showed that the
plaintiffs served those defendants at DHHS, located at 301
Centennial Mall South, in Lincoln.

By failing to serve separate summons on DHHS and the
DHHS employees in their official capacities through the
Attorney General, the plaintiffs failed to serve those defend-
ants. The district court correctly determined that service on
DHHS and the DHHS employees in their official capacities
was not proper and dismissed them from the suit.

### (b) Service on DHHS Employees in
### Their Individual Capacities

Eighteen DHHS employees were named in the plaintiffs'
complaint. As of May 3, 2010, when the summons were
received at DHHS, 15 of them no longer worked for DHHS.
Only Adams-Parks, Bennett, and Reckling still worked for

DHHS. The plaintiffs served all 18 DHHS employees in their individual capacities via certified mail at DHHS.

The plaintiffs do not claim that the 15 DHHS employees who no longer worked at DHHS at the time of service were properly served. The service method would not notify them they had been sued in the underlying lawsuit. The district court did not err in dismissing these 15 DHHS employees in their individual capacities.

The question remains whether Adams-Parks, Bennett, and Reckling were properly served via certified mail at their place of employment. The plaintiffs argue that certified mail to Adams-Parks', Bennett's, and Reckling's employment address was all that was required to effectuate proper service. The State argues that serving the summons on these employees via certified mail at their place of employment was not reasonably calculated to apprise employees of the pendency of the action and that the three DHHS employees who still worked at DHHS never received the summons.

Because the DHHS employees were sued in their individual capacities, Neb. Rev. Stat. § 25-508.01(1) (Cum. Supp. 2014) governs service upon them. Section 25-508.01(1) provides that "[a]n individual party . . . may be served by personal, residence, certified mail, or designated delivery service."

Section 25-508.01(1) allowed the plaintiffs to elect the method in which they wished to have service made on the defendants. Neb. Rev. Stat. § 25-505.01(c) (Cum. Supp. 2014) governs service by certified mail. It states that certified mail service "shall be made . . . within ten days of issuance, sending the summons to the defendant by certified mail with a return receipt requested showing to whom and where delivered and the date of delivery." As we stated in *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010), § 25-505.01 does not require service to be sent to the defendant's residence or restrict delivery to the addressee. But due process requires notice to be reasonably calculated to apprise interested parties of the pendency of the action and to afford them the opportunity to present their objections. *Doe v. Board of Regents, supra*.

The 18 summons were received by DHHS. Hayden, an employee of DHHS, signed the certified mail receipts for all of the DHHS employees. He did so as part of his duties to sign for certified mail addressed to DHHS. But Hayden was not an appointed agent or an otherwise designated agent of any of the defendants, was not one of their family members, and did not reside with any of the defendants. He testified that he did not know whether any of the named individuals received the mail for which he signed certified mail receipts.

Once the certified mail was signed for by Hayden, it is unclear where the mail was sent. But the evidence established that Adams-Parks, Bennett, and Reckling did not receive the certified mail and did not know about the summons until almost a year later.

We conclude that service by certified mail at DHHS was not "reasonably calculated to notify the defendants, in their individual capacities, of the lawsuit." See *Doe*, 280 Neb. at 496, 788 N.W.2d at 272. The plaintiffs elected to serve the defendants by certified mail at their place of employment. Although they were entitled to elect the method of service, they bore the risk that the method was not reasonably calculated to provide notice to the individual that he or she had been served. Hayden did not know whether Adams-Parks, Bennett, or Reckling worked for DHHS. He was not authorized to sign for their certified mail, and they did not receive the summonses. DHHS was the largest state agency of the State of Nebraska at the time the lawsuit was filed and employed nearly 6,100 employees located across the state. The method of service by certified mail at DHHS was not reasonably calculated to notify Adams-Parks, Bennett, and Reckling that they had been sued in their individual capacities. The district court properly dismissed all 18 DHHS employees in their individual capacities.

## 2. State's Motion to Dismiss

The State moved to dismiss all six of the plaintiffs' causes of action against it. The district court sustained the State's motion as to the plaintiffs' first and second causes of action, because it concluded that the State had not waived its sovereign

immunity as to § 1983 claims. But the court overruled the State's motion as to the remaining four causes of action, which it determined "state[d] a claim against the State."

We review de novo whether a party is entitled to dismissal of a claim based on federal or state immunity, drawing all reasonable inferences for the nonmoving party. *Michael E. v. State*, 286 Neb. 532, 839 N.W.2d 542 (2013). Upon our de novo review, we find that the district court should have dismissed all six of the plaintiffs' causes of action against the State.

### (a) State Has Not Waived Sovereign Immunity

[5,6] The immunity of states from suit is a fundamental aspect of the sovereignty which the states enjoyed before ratification of the Constitution and which they retain today. *Northern Ins. Co. of N. Y. v. Chatham County, Ga.*, 547 U.S. 189, 126 S. Ct. 1689, 164 L. Ed. 2d 367 (2006), citing *Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999). It is inherent in the nature of sovereignty for a state not to be amenable to the suit of an individual without its consent. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996).

[7] Neb. Const. art. V, § 22, provides that the State may sue and be sued and that the Legislature shall provide by law in what manner and in what courts suits shall be brought. *McKenna v. Julian*, 277 Neb. 522, 763 N.W.2d 384 (2009). We have interpreted this provision to mean that the State is permitted to lay its sovereignty aside and consent to be sued on such terms and conditions as the Legislature may prescribe. *Id.*

But Nebraska has not waived its sovereign immunity with regard to § 1983 suits brought against it. See, *Stagemeyer v. County of Dawson*, 192 F. Supp. 2d 998 (D. Neb. 2002); *Winnie v. Clarke*, 893 F. Supp. 875 (D. Neb. 1995); *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999), *disapproved on other grounds*, *Simon v. City of Omaha*, 267 Neb. 718, 677 N.W.2d 129 (2004); *Patteson v. Johnson*, 219 Neb. 852, 367 N.W.2d 123 (1985); *Wiseman v. Keller*, 218 Neb. 717, 358 N.W.2d 768 (1984). Neither did the enactment of

§ 1983 abrogate the State's 11th Amendment immunity by creating a remedy against the State. See *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), *holding limited on other grounds, Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). There is no waiver of immunity by the State that would allow the plaintiffs' suit against it.

### (b) Exemption to Immunity Protection Not Applicable

The plaintiffs argue that even though the State did not waive its sovereign immunity, it was nonetheless subject to liability in this instance because DHHS was implementing an unconstitutional "'policy statement, ordinance, regulation or decision officially adopted'" and acting "'pursuant to governmental "custom."'" Brief for appellants at 23. Their argument relies upon *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), and *Poor Bear v. Nesbitt*, 300 F. Supp. 2d 904 (D. Neb. 2004).

In *Monell*, 436 U.S. at 694, the Supreme Court held that local municipalities could be liable for damages under § 1983 if the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" on the party. The court in *Poor Bear*, 300 F. Supp. 2d at 916, similarly held that local governing bodies could be sued directly under § 1983 where "'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" Local governments could also be sued for "'constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.'" *Id*.

The plaintiffs argue that this exception to immunity applies to the State. We disagree. This exception to immunity applies only to local governments and not to State governments. The Supreme Court in *Monell* stated, "Our holding today is, of course, limited to local government units which are not

considered part of the State for Eleventh Amendment purposes." 436 U.S. at 690 n.54. The court in *Poor Bear, supra*, also limited its holding only to local governing bodies. The plaintiffs do not cite to any authority that extends this exception to state governments.

### (c) Immunity Barred All
### Six Causes of Action

The district court concluded that sovereign immunity barred only those causes of action against the State in which the plaintiffs' requested monetary damages. This decision was consistent with *Michael E. v. State*, 286 Neb. 532, 541, 839 N.W.2d 542, 551 (2013), in which we stated that "in an action brought under 42 U.S.C. § 1983, 11th Amendment immunity does not bar an action against a state or state officials for prospective declaratory or injunctive relief."

But in the absence of a waiver, sovereign immunity bars *all* suits against the State, "regardless of the relief sought." See *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). See, also, *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (holding limited on other grounds by *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), and superseded by statute on other grounds as stated in *Joshua B. v. New Trier Tp. High School Dist. 203*, 770 F. Supp. 431 (N.D. Ill. 1991)). Therefore, in *Michael E., supra*, we erred in stating that sovereign immunity did not bar an action against the State for prospective relief, and such statement is expressly disapproved.

To the extent our statement in *Michael E.* can be interpreted as suggesting that the State can be sued under § 1983 for prospective declaratory or injunctive relief, that interpretation is also disapproved. The State cannot be sued under § 1983 for prospective declaratory or injunctive relief. See *Will, supra*. The State is removed from the category of possible defendants in a § 1983 action by virtue of the fact that a state is not a "person." See *id*.

The district court erred in not dismissing all of the plaintiffs' causes of action upon the State's motion to dismiss, because

they were all barred by sovereign immunity and because the State cannot be sued under § 1983. We note, however, that upon the State's motion for summary judgment, the court dismissed the causes of action that survived the State's motion to dismiss. Granting summary judgment in favor of the State accomplished the same result as sustaining the State's motion to dismiss as to all causes of action—a complete dismissal of the plaintiffs' complaint. The court reached the correct result, and we therefore affirm the dismissal of the plaintiffs' complaint.

## 4. STANDING AND MOOTNESS

[8] The district court found that the plaintiffs did not have standing to bring their three causes of action challenging the constitutionality of §§ 43-283.01 and 43-1312. The court also concluded that those three causes of action were moot. The plaintiffs assign error to these determinations. However, because we have concluded that all of the plaintiffs' causes of action should have been dismissed on sovereign immunity grounds, we need not address standing or mootness. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *White v. Kohout*, 286 Neb. 700, 839 N.W.2d 252 (2013).

## VI. CONCLUSION

The district court properly dismissed DHHS and the DHHS employees in their official and individual capacities for lack of proper service of process. The court correctly determined that sovereign immunity barred the plaintiffs' claims against the State for monetary damages under 42 U.S.C. § 1983. It erred in not dismissing all of the plaintiffs' causes of action against the State upon the State's motion to dismiss. Because the court achieved the same result by dismissing all remaining causes of action against the State on summary judgment, we affirm the dismissal of the plaintiffs' complaint.

AFFIRMED.

CASSEL, J., not participating.