# United States Court of Appeals
## For the First Circuit

No. 09-1192

LYUBOV Y. GORELIK, M.D.,

Plaintiff, Appellant,

v.

KEVIN R. COSTIN, PA-C, President,
NH State Board of Medicine,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Stahl, Circuit Judges.

Richard F. Johnston on brief for appellant.
Suzanne M. Gorman and Kelly A. Ayotte on brief for appellee.

May 20, 2010

**STAHL**, **Circuit Judge**.  Dr. Lyubov Gorelik ("Gorelik") appeals from the dismissal of her five-count complaint against Defendant-Appellee Kevin Costin ("Defendant") in his official capacity as president of the New Hampshire State Board of Medicine. Counts I through IV of Gorelik's complaint assert that Defendant violated her due process and equal protection rights under 42 U.S.C. § 1983 and the Fourteenth Amendment.  All four of these counts were dismissed as untimely.  Count V, a claim for retaliation under Section 1983 and the First and Fourteenth Amendments, was dismissed on the basis of it being too speculative. After a careful review of the record, we affirm in all respects.

## I. Facts and Background

In 1997 Gorelik applied for and was accepted to a residency program in psychiatry at Dartmouth Hitchcock Medical Center ("DHMC") scheduled to begin in July of that year.  In June, in connection with that program, Gorelik applied for a resident training license to practice medicine in New Hampshire through the New Hampshire State Board of Medicine (the "Board").  Following that application, on July 3, 1997, the Board issued Gorelik a temporary ninety-day training license through an Order of Conditional Approval ("Order") pending completion of her appeal of her dismissal from a previous training program in the State of New York.  After several extensions, her temporary license expired on

April 15, 1998.  On June 10, 1998, Gorelik's request to renew that license was denied by the Board.

Meanwhile, in August 1997, a newsletter published by the Board listed the Order granting Gorelik her temporary license under the heading "Disciplinary Actions."  Among the "final disciplinary actions" listed in the newsletter was Gorelik's "Order of Conditional Approval -- Temporary training license granted during appeal of dismissal from a prior training program."  This newsletter was available on the Board's website.  Some time in 2002, Gorelik became aware of the newsletter and its availability on the Board's website.

Gorelik asserts that the newsletter continued to be available on the Board's website through the filing of this action, and that it continued to list the Order as a disciplinary action. Gorelik argues that the listing of the Order under the heading of "Disciplinary Actions" was a mischaracterization.  She further contends that an internet search of her name will generate hits referring to the mischaracterization and that because "[t]his mischaracterization improperly implies wrongdoing on [her] part . . . [it] is harmful to her professional reputation."  Finally, Gorelik argues that had she known that the Order would be published as a disciplinary action, she would not have accepted the temporary license from the Board.

-3-

On February 5, 2004, Gorelik petitioned the Board for a hearing to have the information pertaining to the Order removed from the Board's website and to change the characterization of the temporary license as a disciplinary action. On June 7, 2004, the Board issued an order in response to Gorelik's petition. The order granted Gorelik's request to remove any characterization of the Order issuing her temporary license as a disciplinary action from its records, including from the newsletter posted on the Board's website. The order also granted Gorelik's request to withhold from publication the Board's response to her petition in the Board's newsletter or on its website so as to avoid further harm to Gorelik's reputation. However, the Board denied Gorelik's request to remove all references to the Order issuing her temporary license from its website and further determined that the June 7, 2004 order itself would be a public record, though the Board would not affirmatively publicize it. Finally, the order provided that it would become final within thirty days unless Gorelik requested in writing that the Board hold a hearing. The record is silent as to whether any such request was made, though Gorelik states in an affidavit that a hearing was scheduled for April 6, 2005.

Though Gorelik argues otherwise, the district court found that in 2004 the Board did indeed change the language of the internet version of the 1997 newsletter to reflect that the

issuance of Gorelik's temporary license was a "board action" and not a disciplinary action.

Gorelik also claims that on or about March 22, 2005, at a prehearing conference,[1] her counsel was advised by the Board's Presiding Officer and attorney, Judy Dickinson, that if Gorelik continued to pursue the petition, it would "necessarily require" Dickinson to disclose to the Board information pertaining to Gorelik's DHMC residency and the 1998 denial of her application to renew her temporary license.  Gorelik's counsel then advised her that further pursuit of a hearing would likely lead the Board to post information about the denial of Gorelik's renewal application to its website.  Thereafter, Gorelik, in April 2005, withdrew her petition in order to avoid further disclosure.  Her complaint was filed on February 5, 2008, almost three years later.

To reiterate, in Counts I through IV, Gorelik alleged violations under 42 U.S.C. § 1983 and the Fourteenth Amendment, arguing that the Defendant violated her due process and equal protection rights by: (1) failing to provide notice that the temporary license as issued would be characterized as a disciplinary action and posted on the Board's website as such; (2) characterizing the issuance of her temporary license as a disciplinary action although it is not generally characterized as

---

[1]The record is silent as to the genesis of this prehearing conference and how it came about.

-5-

such for others; (3) failing to provide notice and an opportunity to be heard prior to treating the license as a disciplinary action; and (4) failing to provide notice and an opportunity to refuse acceptance of the temporary license because of the mischaracterization of it as a disciplinary action. In Count V, she asserted that the defendant violated her First and Fourteenth Amendment rights by threatening to retaliate against her (in the form of public disclosure) for petitioning the Board for relief. Gorelik sought declaratory and injunctive relief, attorney's fees, and costs.

The Defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) arguing, inter alia, that the applicable statute of limitations had expired and that Gorelik failed to state a claim on which relief could be granted. The district court dismissed the claims solely on the grounds that Counts I through IV were time-barred and Count V was too speculative and also noted that the parties should not infer that other grounds for dismissal were without merit.

On this appeal, Gorelik raises two issues. First, she argues that under the "continuing violation" doctrine, Counts I through IV should not have been dismissed as time-barred, and second, that Count V should not have been dismissed because it was properly pled.

## II. Discussion

We consider first her claim that, as to Counts I through IV of her complaint, the continuing violation doctrine was sufficient to bring those counts within the applicable limitations period.

We review de novo a district court order granting a motion to dismiss under Rule 12(b)(6), "tak[ing] the well-pleaded facts in the light most favorable to the plaintiff and indulg[ing] [her] all reasonable inferences." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008). While a complaint does not need "detailed factual allegations" to survive a motion to dismiss, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Where, as here, dismissal is premised on the running of a statute of limitations, we will affirm when the pleader's allegations "leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998); accord Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 137 (1st Cir. 2005).

As 42 U.S.C. § 1983 does not include a limitations period, courts have held that the relevant limitations period is that which governs general personal injury claims in the state where the claim arose. See Gilbert v. City of Cambridge, 932 F.2d 51, 57 (1st Cir. 1991) (citing Owens v. Okure, 488 U.S. 235, 249-50

(1989)).  Here, the applicable New Hampshire statute of limitations is three years.  See N.H. Rev. Stat. Ann. § 508:4 (1997).  It is federal law, however, that determines when the statute of limitations begins to run.  Morán Vega v. Cruz Burgos, 537 F.3d 14, 20 (1st Cir. 2008).  "Section 1983 claims generally accrue when the plaintiff knows, or has reason to know of the injury on which the action is based, and a plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt."  Id. (internal quotations and citations omitted).

In this case, the issuance of Gorelik's temporary license and the posting of the newsletter labeling it a "disciplinary action," which are the subject of Gorelik's first four counts, occurred in 1997, approximately eleven years before Gorelik filed her complaint, and well outside the limitations period.  Even if we were to find that those claims accrued in 2002, when Gorelik alleges that she first learned of the newsletter, the allegations would still be outside the limitations period.

Gorelik argues that her action is nonetheless timely under the continuing violation doctrine.

> Under this doctrine, a plaintiff can recover for injuries that occurred outside the statute of limitations under certain narrow conditions.  Although the name of the doctrine may sound auspicious for late-filing plaintiffs, it does not allow a plaintiff to avoid filing suit so long as some person continues to violate [her] rights.  "The 'continuing violation' doctrine is misnamed . . . .  The office of the misnamed doctrine is to allow suit to

-8-

be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought."

Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008) (quoting Morales-Tañon v. Puerto Rico Elec. Power Auth., 524 F.3d 15, 18-19 (1st Cir. 2008)).[2]

As the Supreme Court held in National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002), a case involving a continuing violation claim under Title VII, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Id. at 113. As the Court reasoned, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Id. at 114. Consequently, discrete discriminatory acts which occur outside the limitations period are time-barred and no longer actionable. Id. at 115.

Thus, the discrete 1997 Board actions which Gorelik alleges caused her harm are untimely pled. Even if we took the date of accrual to be 2002, when Gorelik discovered the newsletter

_____

[2]We note, as did the district court, that we assume without deciding that the continuing violation doctrine is applicable to tort actions in New Hampshire. See Gorelik v. Costin, No. 08-cv-036-JL, 2008 WL 5448220, at *4 n.12 (D.N.H. Dec. 31, 2008) (citing Singer Asset Finance Co., LLC v. Wyner, 937 A.2d 303, 312-13 (N.H. 2007), as indicative of the New Hampshire Supreme Court's willingness to consider the doctrine's applicability in tort).

posted on the Board's website, the filing of her complaint in 2008 would still be untimely.

Gorelik asserts that the Board routinely updates and maintains its website, thereby "republishing" the newsletter characterizing the issuance of her temporary training license as a disciplinary action. According to Gorelik, "[e]ach update is a continued and unlawful act rendering the continuing violation doctrine applicable to this case." We do not accept the "republication" concept, given the fact that the issuance of Gorelik's temporary license and its posting in a newsletter on the Board's website were discrete acts. Consequently, the continuing violation doctrine does not apply to this case, and the timeliness of Gorelik's claim turns on whether an actionable violation of her First or Fourteenth Amendment rights occurred during the limitations period. See Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130-31 (1st Cir. 2009) (finding that the continuing violation doctrine did not apply to plaintiff's time-barred claim challenging employer's denial of request for accommodation under the ADA, on the ground that such a denial is a "discrete discriminatory act that . . . does not require repeated conduct to establish an actionable claim.").

As a preliminary matter, even though Gorelik maintains in her complaint and appellate brief that the issuance of her temporary license continued to be labeled a disciplinary action on

the Board's website until the filing of this action, the district court found that the Board relabeled the issuance of the license as a "board action" some time in 2004, and Gorelik has presented no actual evidence contrary to the court's finding.

But even assuming that the 1997 newsletter accessible on the Board's website continued to classify the issuance of Gorelik's temporary license as a disciplinary action until a date within the limitations period, the mere fact that the newsletter was accessible on an updated website does not constitute an "independently discriminatory" act that would itself entitle Gorelik to relief, Morgan, 536 U.S. at 113.  The Board actions which Gorelik alleges caused her harm were taken in 1997.  As the district court correctly reasoned, "[t]he fact that records of the Board's acts can still be accessed by the public on the internet does not constitute a continuing tort, but rather the continuing effects of an alleged harm." Gorelik, 2008 WL 5448220, at *4.  As we have noted, "it is imperative that we distinguish between the occurrence of a discriminatory act and the later effects of that act." Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 182 (1st Cir. 1989).

Gorelik argues that the Board "routinely maintains and updates its website thereby continuing [sic] republishing the material," but the only changes which the Board appears to have made to the newsletter in question were in Gorelik's favor,

-11-

reclassifying the issuance of her license as a "board action." Otherwise, the Board's more general updating of its website does not constitute a separate wrong sufficient to form the basis of Gorelik's claim. Rather, the newsletter's continued accessibility on the Board's updated website is more appropriately characterized as a continued effect of the Board's 1997 acts, which are themselves outside the limitations period.

Gorelik's final argument, that the alleged threat of retaliation committed by the Board in March 2005 was a "separate and discrete unlawful act" which would serve as the basis for her claim, also fails. We conclude, as did the district court, that this claim, asserted in Count V, is too speculative to entitle Gorelik to relief. See Bell Atl. Corp., 550 U.S. at 555.

In order to succeed on a First Amendment retaliation claim, a party must show that her conduct "was constitutionally protected, and that this conduct was 'a substantial factor [or] . . . a motivating factor' driving the allegedly retaliatory decision." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 10 (1st Cir. 2005) (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). Even drawing all reasonable inferences in Gorelik's favor, we find that she has failed to identify any retaliatory decision or action by the Board in response to her attempts to avail herself of administrative remedies.

Gorelik's allegations of retaliation are entirely founded on a March 23, 2005, letter which she received from her then-counsel, Cinde Warmington. In that letter, Warmington informed Gorelik that the Presiding Officer, Judy Dickinson, at a pre-hearing conference had

> received authorization [from the Board] to attempt to negotiate settlement language. Subsequent to that Board meeting, Attorney Dickinson discovered the information in your [Gorelik's] file regarding the DHMC residency program and the denial of your later renewal application. Although she is willing to continue negotiating settlement language which she could present to the Board, any further presentation to the Board would necessarily require her to disclose the information about the DHMC residency and the renewal application denial.

This statement did not amount to a threat of retaliatory action. Rather, Attorney Dickinson was, at most, stating that she would have to inform her Board colleagues of new information that she had learned about Gorelik. And, in fact, it is not clear from the language of the letter that Dickinson did even that much. The language could just as easily be read to convey <u>Attorney Warmington's</u> concerns that any further presentation by Dickinson to the Board would require Dickinson to disclose certain information, rather than Dickinson's "threat" to do as much.

The remaining statements in the letter which Gorelik characterizes as a "threatened retaliatory act" are merely Attorney Warmington's suppositions about the possible outcomes and risks attending Gorelik's continued pursuit of her administrative

remedies.  This does not constitute retaliation by the Board, threatened or otherwise.

Thus, we affirm the district court's dismissal of Gorelik's complaint.

**<u>Affirmed.</u>**