Anthony K. and Arva K., individually and as
guardians and next friends on behalf of
their minor children, Ashley K. et al.,
appellants, v. Nebraska Department
of Health and Human Services
et al., appellees.

___ N.W.2d ___

Filed November 21, 2014.    No. S-12-736.

1. **Motions to Dismiss: Immunity: Appeal and Error.** An appellate court reviews de novo whether a party is entitled to dismissal of a claim based on federal or state immunity, drawing all reasonable inferences for the nonmoving party.

2. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.

3. **Actions: Immunity.** A suit against a state agency is a suit against the State and is subject to sovereign immunity.

4. **Actions: Public Officers and Employees: Pleadings.** Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.

5. **Actions: Public Officers and Employees: Immunity: Appeal and Error.** In reviewing actions against state officials, a court must determine whether an action against individual officials sued in their official capacities is in reality an action against the state and therefore barred by sovereign immunity.

6. **Actions: Parties.** In an action for the recovery of money, the State is the real party in interest.

7. **Actions: Public Officers and Employees: Immunity: Waiver: Damages.** Sovereign immunity—if not waived—bars a claim for money even if the plaintiff has named individual state officials as nominal defendants.

8. **Actions: Parties: Public Officers and Employees.** Official-capacity actions for prospective relief are not treated as actions against the State.

9. **Public Officers and Employees: Immunity.** Where a court commands a state official to do nothing more than refrain from violating federal law, he or she is not the State for sovereign immunity purposes.

10. **Public Officers and Employees: Immunity: Declaratory Judgments: Injunction.** The State's sovereign immunity does not bar a claim against state officers which seeks only prospective declaratory or injunctive relief for ongoing violations of federal law.

11. **Actions: Guardians Ad Litem: Damages: Immunity.** A guardian ad litem is entitled to absolute immunity from any suit for damages based upon conduct within the scope of his or her judicially imposed duties as guardian ad litem.

12. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

13. **Limitations of Actions: Pleadings.** A challenge that a pleading is barred by the statute of limitations is a challenge that the pleading fails to allege sufficient facts to constitute a claim upon which relief can be granted.

14. **Motions to Dismiss: Pleadings.** To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face.

15. **Motions to Dismiss: Appeal and Error.** When reviewing a dismissal order, the appellate court accepts as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the pleader's conclusions.

16. **Civil Rights: Limitations of Actions: States.** The law of the state in which an action is brought under 42 U.S.C. § 1983 (2012) provides the appropriate statute of limitations.

17. **Civil Rights: Limitations of Actions.** For purposes of selecting one statute of limitations, actions brought under 42 U.S.C. § 1983 (2012) shall be characterized as personal injury actions.

18. ____: ____. In Nebraska, claims brought under 42 U.S.C. § 1983 (2012) are governed by the statute of limitations in Neb. Rev. Stat. § 25-207 (Reissue 2008).

19. **Limitations of Actions.** A statute of limitations begins to run as soon as the claim accrues.

20. **Civil Rights: Limitations of Actions: States.** Although state law determines which statute of limitations applies to a claim brought under 42 U.S.C. § 1983 (2012), the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law.

21. **Civil Rights: Limitations of Actions.** A claim brought under 42 U.S.C. § 1983 (2012) generally accrues when the plaintiff has a complete and present cause of action.

22. **Constitutional Law: Civil Rights: Pleadings.** In order to state a cause of action under 42 U.S.C. § 1983 (2012), a plaintiff must allege facts establishing conduct by a person acting under color of state law which deprived the plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States.

23. **Constitutional Law: Civil Rights: Limitations of Actions.** A claim under 42 U.S.C. § 1983 (2012) accrues when a plaintiff knows or should know that his or her constitutional rights have been violated. The plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt.

24. **Limitations of Actions: Torts.** The continuing tort doctrine does not delay when claims based on continuing torts accrue.

25. ____: ____. The continuing tort doctrine is not a separate doctrine, or an exception to the statute of limitations, as much as it is a straightforward application of the statute of limitations: It simply allows claims to the extent that they accrue within the limitations period.

Appeal from the District Court for Douglas County: J Russell Derr, Judge. Affirmed.

Amy Sherman, of Sherman & Gilner, P.C., L.L.O., for appellants.

Jon Bruning, Attorney General, and John L. Jelkin for appellees Nebraska Department of Health and Human Services et al.

Monica Green Kruger for appellee Richard Bollerup.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Miller-Lerman, JJ., and Bishop, Judge.

Wright, J.

## I. NATURE OF CASE

This appeal involves the second of two cases brought under 42 U.S.C. § 1983 (2012) by Anthony K. and Arva K., individually and as guardians and next friends on behalf of their seven minor children. In both this and the first case, the plaintiffs alleged that over the course of the juvenile proceedings involving three of their children, the plaintiffs' constitutional and statutory rights had been violated.

The plaintiffs' claims against the State of Nebraska were determined in *Anthony K. v. State, ante* p. 523, ___ N.W.2d ___ (2014) (*Anthony K. I*), where we held that all six of the plaintiffs' causes of action against the State were barred by sovereign immunity. The instant case deals with the plaintiffs' claims against the Nebraska Department of Health and Human Services (DHHS), 18 DHHS employees in their official and individual capacities, and the children's guardian ad litem. Although premised on the same facts and arising from the same allegations as *Anthony K. I*, this case presents different issues for our resolution.

In the instant case, the plaintiffs appeal the orders of the Douglas County District Court that sustained the defendants' motions to dismiss. In particular, the plaintiffs challenge the district court's findings that the defendants were entitled to sovereign, qualified, absolute, and statutory immunities and that the plaintiffs' claims against the DHHS employees in their individual capacities were barred by the statute of limitations. For the following reasons, we affirm the dismissal of the plaintiffs' claims.

## II. SCOPE OF REVIEW

[1] We review de novo whether a party is entitled to dismissal of a claim based on federal or state immunity, drawing all reasonable inferences for the nonmoving party. *Michael E. v. State*, 286 Neb. 532, 839 N.W.2d 542 (2013).

[2] A district court's grant of a motion to dismiss is reviewed de novo. *Estate of Teague v. Crossroads Co-op Assn.*, 286 Neb. 1, 834 N.W.2d 236 (2013).

## III. FACTS

The background information in this case is discussed at length in *Anthony K. I*. In summary, three minor children of the plaintiffs, Ashley K.; Anthony K., Jr. (Anthony Jr.); and Ali K., were removed from the family home in 2000. For various reasons, the children were not returned to the care of their parents until 2008 and the juvenile case was not closed until 2009.

The plaintiffs initially filed suit against the State, DHHS, the individual DHHS employees assigned to the juvenile case, and the guardian ad litem. However, due to lack of proper service, the district court dismissed all defendants except the State. Because more than 6 months had passed from the filing of the initial lawsuit, any service of process under the plaintiffs' first complaint would have been ineffective on DHHS, the DHHS employees, and the guardian ad litem. See Neb. Rev. Stat. § 25-217 (Reissue 2008). Therefore, the plaintiffs filed the present lawsuit against these parties under a separate complaint.

The plaintiffs alleged that DHHS, the DHHS employees, and the guardian ad litem violated the plaintiffs' right to familial integrity. They claimed that Ashley, Anthony Jr., and Ali were wards of the State from 2000 to 2009 and that the family was separated for too long. They alleged that DHHS and the DHHS employees failed to make reasonable efforts to preserve or reunify the family and that they had a duty to reunify the family sooner than when it finally occurred. The plaintiffs asked for declaratory judgment, general and special damages, costs, and attorney fees. They did not seek injunctive relief.

Richard Bollerup, the guardian ad litem for the minor children, moved to dismiss for failure to state a claim upon which relief could be granted. Subsequently, DHHS and the DHHS employees in their official capacities also moved to dismiss.

On September 1, 2011, the district court determined that DHHS and the DHHS employees sued in their official capacities were shielded by sovereign immunity from an action brought under 42 U.S.C. § 1983 and could not be liable to the plaintiffs for monetary damages. It thus sustained the motions to dismiss as to the plaintiffs' § 1983 claims against DHHS and the DHHS employees in their official capacities. It sustained Bollerup's motion to dismiss based on his right to absolute immunity as the guardian ad litem. Following this order, the only defendants remaining in the action were the DHHS employees in their individual capacities.

Of the 18 DHHS employees sued by the plaintiffs, 2 were not named in their individual capacities and 10 were not properly served in that capacity. Those 12 employees were not parties to the present action in their individual capacities. Between August and October 2011, the six employees who had been properly served (David Hammer, Todd Reckling, Chris Peterson, Sandy Thompson, Jennifer Holt, and Jessica Hatfield) filed motions to dismiss the plaintiffs' claims against them in their individual capacities. They argued that these claims should be dismissed, because the claims were barred by sovereign, qualified, absolute, and statutory immunities and by the statute of limitations. Hereinafter, we refer to the six DHHS employees who were parties to the present action in their individual capacities and who filed motions to dismiss as "the six employees."

On February 3, 2012, the district court sustained the motions to dismiss filed by the six employees. It determined that they had (1) sovereign immunity for all actions performed within the scope of their duties as DHHS employees; (2) absolute immunity for any testimony given by them as witnesses in the juvenile court hearings; (3) qualified immunity, because there was no clearly established right to

familial integrity; and (4) statutory immunity under the Adult Protective Services Act.

The district court also concluded that the claims against the six employees in their individual capacities were barred by the applicable statute of limitations. It explained that even if there was a continuing pattern of tortious conduct, as the plaintiffs had argued, recovery for each injury had to be sought within 4 years. Given that the plaintiffs' complaint was filed on March 8, 2011, their "period of recovery would be limited to the four years before that date." However, the plaintiffs complaint contained "no allegations against [the six employees], in their individual capacities, after 2005." Therefore, the court held that the statute of limitations for the plaintiffs' claims against the six employees in their individual capacities ran "sometime in 2009."

On March 5, 2012, the plaintiffs appealed the district court's decisions. The Nebraska Court of Appeals issued an order to show cause why the district court's orders were final and appealable. The record before the Court of Appeals did not include dismissal orders for the DHHS employees who had not been properly served in their individual capacities. The plaintiffs failed to respond, and on June 8, 2012, in case No. A-12-194, the appeal was dismissed without opinion.

On July 20, 2012, at the request of the plaintiffs, the district court issued an order dismissing the DHHS employees who had not been properly served in their individual capacities. On August 15, the plaintiffs timely filed the present appeal. We moved the case to our docket on our own motion. See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

## IV. ASSIGNMENTS OF ERROR

The plaintiffs assign, summarized and restated, that the district court erred in (1) sustaining the defendants' motions to dismiss; (2) finding that the defendants were shielded from liability on the basis of sovereign, absolute, qualified, and statutory immunities; (3) failing to find any exception to the defendants' immunity; (4) finding that the plaintiffs failed to plead that their constitutionally protected rights were

violated; (5) finding that their claims were barred by applicable statutes of limitations; and (6) holding that their claims were based in tort.

## V. ANALYSIS

### 1. Motion to Dismiss Filed by DHHS and DHHS Employees in Official Capacities

The district court sustained the motion to dismiss filed by DHHS and the DHHS employees in their official capacities, because it concluded that they were immune from the plaintiffs' § 1983 claims.

### (a) DHHS

[3] A suit against a state agency is a suit against the State and is subject to sovereign immunity. *Michael E. v. State*, 286 Neb. 532, 839 N.W.2d 542 (2013). "A suit generally may not be maintained directly against . . . an agency or department of the State, unless the State has waived its sovereign immunity." *Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684, 102 S. Ct. 3304, 73 L. Ed. 2d 1057 (1982). In *Anthony K. I*, we determined that the State had not waived its sovereign immunity as to § 1983 claims. In the absence of such a waiver, the plaintiffs' claims against DHHS in the instant case, which were brought under § 1983, are also barred by sovereign immunity.

The plaintiffs argue that even though the State did not waive its sovereign immunity, DHHS was nonetheless subject to liability, because it was implementing an unconstitutional "'policy statement, ordinance, regulation or decision officially adopted'" and acting "'pursuant to governmental "custom."'" See brief for appellants at 15. We previously addressed this argument, and dismissed it, in *Anthony K. I*. The district court did not err in sustaining DHHS' motion to dismiss.

### (b) DHHS Employees in Official Capacities

We first clarify that sovereign immunity has potential applicability to suits brought against state officials in their official

capacities only. It does not apply when state officials are sued in their individual capacities—that is, when a suit seeks to hold state officials personally liable. See *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). This is true even when state officials are sued in their individual capacities for acts taken within the scope of their duties and authority as state officials. See *id*.

[4,5] "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). Thus, in reviewing actions against state officials, "a court must determine whether an action against individual officials sued in their official capacities is in reality an action against the state and therefore barred by sovereign immunity." *Michael E.*, 286 Neb. at 540, 839 N.W.2d at 550-51.

[6,7] In an action for the recovery of money, the State is the real party in interest. *Id*. This is because "'a judgment against a public servant "in his official capacity" imposes liability on the entity that he represents.'" See *Graham*, 473 U.S. at 169. Accordingly, "sovereign immunity—if not waived—bars a claim for money even if the plaintiff has named individual state officials as nominal defendants." *Michael E.*, 286 Neb. at 541, 286 N.W.2d at 551.

[8-10] In contrast, "official-capacity actions for prospective relief are not treated as actions against the State." *Graham*, 473 U.S. at 167 n.14. See, also, *VA Office for Prot. and Advoc. v. Stewart*, ___ U.S. ___, 131 S. Ct. 1632, 179 L. Ed. 2d 675 (2011). Where a court "commands a state official to do nothing more than refrain from violating federal law, he [or she] is not the State for sovereign-immunity purposes." *Stewart*, 131 S. Ct. at 1638. Thus, the State's sovereign immunity "does not bar a claim against state officers which seeks only prospective declaratory or injunctive relief for ongoing violations of federal law." See *Doe v. Board of Regents*, 280 Neb. 492, 510, 788 N.W.2d 264, 281 (2010). See, also, *Green v. Mansour*, 474 U.S. 64, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985); *Westside Mothers v. Haveman*, 289 F.3d 852 (6th Cir. 2002); *Bragg v. West Virginia Coal Ass'n*, 248 F.3d 275 (4th

Cir. 2001); *Walker v. Livingston*, 381 Fed. Appx. 477 (5th Cir. 2010).

In the instant case, the plaintiffs sued the DHHS employees in their official capacities for general and special damages, costs, and attorney fees and for a declaratory judgment that they had violated the plaintiffs' rights. The plaintiffs did not seek injunctive relief. As we determined in *Anthony K. I*, the State has not waived its sovereign immunity as to § 1983 claims. Therefore, the plaintiffs' claims against the DHHS employees in their official capacities which were brought pursuant to § 1983 and which sought monetary damages are barred by sovereign immunity. Additionally, the plaintiffs' claims against the employees in their official capacities for declaratory judgment are barred, because they did not allege a continuing violation of federal law. Nor is there a threat of future violations—Ashley, Anthony Jr., and Ali's juvenile case is closed, and the family no longer lives in Nebraska. In the absence of such allegations, the plaintiffs' claims for declaratory judgment do not fall within the limited exception for actions seeking prospective relief for ongoing violations of federal law.

All of the plaintiffs' claims against the DHHS employees in their official capacities are barred by sovereign immunity. The district court did not err in sustaining the motions to dismiss as to the DHHS employees in their official capacities.

### 2. Motion to Dismiss Filed
### by Guardian Ad Litem

The district court sustained the guardian ad litem's motion to dismiss, because it concluded that he was immune from the plaintiffs' § 1983 claims. We agree.

Most public officials are entitled only to qualified immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993). However, certain officials are given "absolute protection from damages liability" for their performance of specific functions. See *Buckley*, 509 U.S. at 269. Such absolute immunity originated in common law and was intended to "protect the integrity of the judicial process." See *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S. Ct. 496, 88

L. Ed. 2d 507 (1985). See, also, *Briscoe v. LaHue*, 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983).

In the instant case, the district court determined, based on *Billups v. Scott*, 253 Neb. 287, 571 N.W.2d 603 (1997), that absolute immunity should extend to Bollerup, the children's guardian ad litem. The plaintiffs argue that it should not.

[11] In *Billups, supra*, we considered whether guardians ad litem were entitled to absolute immunity. We explained that the scope of absolute immunity was determined by "official functions performed, and not the office held." See *id*. at 290, 571 N.W.2d at 605. And we noted that in order to determine whether to grant absolute immunity, a court must "examine the nature of the functions with which a particular official . . . has been lawfully entrusted." See *id*. After examining the role of guardians ad litem, we agreed with the conclusion of a Colorado court that guardians ad litem were "adjunct[s] of the court." *Id*. at 292, 571 N.W.2d at 606. Thus, we concluded that a guardian ad litem is entitled to absolute immunity from any suit for damages based upon conduct within the scope of his or her judicially imposed duties as guardian ad litem. See *Billups, supra*.

Other courts have similarly recognized that a guardian ad litem has absolute immunity for actions that he or she takes as part of the judicial process. See, e.g., *Dahl v. Charles F. Dahl, M.D., P.C.*, 744 F.3d 623 (10th Cir. 2014); *Jones v. Brennan*, 465 F.3d 304 (7th Cir. 2006); *Dornheim v. Sholes*, 430 F.3d 919 (8th Cir. 2005); *Fleming v. Asbill*, 42 F.3d 886 (4th Cir. 1994); *Cok v. Cosentino*, 876 F.2d 1 (1st Cir. 1989); *Gardner by Gardner v. Parson*, 874 F.2d 131 (3d Cir. 1989).

The plaintiffs argue the district court incorrectly relied on *Billups* to determine that Bollerup was entitled to absolute immunity, because the guardian ad litem in *Billups* was sued under a negligence theory and not in a § 1983 action. We do not find this difference significant. In *Billups*, we determined that absolute immunity attached to the functions performed by guardians ad litem within the scope of their duties as adjuncts of a court. Under that test, the applicability of absolute immunity to any particular action depended upon whether the action was performed within the scope of the guardian ad

litem's duties and not upon the theory under which he or she was sued. Indeed, in *Billups*, we discussed with approval a case in which absolute immunity was held to protect a guardian ad litem from § 1983 claims. See *Kurzawa v. Mueller*, 732 F.2d 1456 (6th Cir. 1984). The absolute immunity recognized in *Billups* was not limited to negligence actions against guardians ad litem.

The district court did not err in relying upon *Billups, supra*, or in concluding, based upon that case, that Bollerup was absolutely immune from the plaintiffs' complaint. Bollerup was entitled to absolute immunity against any suit for damages arising from conduct within the scope of his duties as guardian ad litem. See *id*. The plaintiffs' complaint did not allege any facts which would support a finding that Bollerup acted outside of the duties assigned to him by the juvenile court. In the absence of any such allegations, absolute immunity barred the plaintiffs' claims against Bollerup.

The plaintiffs argued that Bollerup was not entitled to absolute immunity because he failed to carry out his duties as guardian ad litem on behalf of the minor children. In the plaintiffs' complaint, they alleged that he failed to carry out his duties by failing to "consult with the children . . . throughout the life of the case." The district court concluded that this allegation did not defeat Bollerup's absolute immunity, and we agree.

In *Marr v. Maine Dept. of Human Services*, 215 F. Supp. 2d 261 (D. Me. 2002), the mother of a minor child who was killed while in the state's care sued the guardian ad litem who handled her child's juvenile case. She alleged that the negligence of the guardian ad litem led to the death of her child, because the guardian ad litem did not perform any investigations into how the child was being treated, did not report that the child was being abused, and saw the child only once during the pendency of the juvenile proceedings. In finding absolute immunity, the Maine court concluded that the factual allegations of failure to perform "merely state[d] [the plaintiff's] dissatisfaction with the manner in which [the guardian ad litem] carried out his appointed duties, rather than alleging instances in which [the guardian ad litem] performed outside the scope

of his authorized duties." *Id*. at 269. The court held that dissatisfaction with the performance of a guardian ad litem's delegated duties was not enough to "remove the protections" of his or her immunity as guardian ad litem. See *id*.

We conclude this reasoning is applicable to the case at bar. The plaintiffs' claim that Bollerup failed to perform his duties did not allege that he had acted outside the scope of his duties as guardian ad litem but merely expressed dissatisfaction with how he carried out those duties. Such an allegation was not enough to overcome the absolute immunity to which Bollerup was entitled in the performance of his judicially delegated duties. See *id*.

In the absence of allegations that Bollerup acted outside the scope of his duties as guardian ad litem, absolute immunity barred the plaintiffs' claims against him. The district court did not err in sustaining his motion to dismiss.

### 3. Motions to Dismiss Filed by Six Employees in Individual Capacities

The district court provided two reasons for dismissing the plaintiffs' claims against the six employees in their individual capacities: The claims were barred (1) due to various immunities of the six employees and (2) by the statute of limitations. In their motions to dismiss, the six employees pleaded multiple grounds for dismissal, including the statute of limitations.

[12] Although the plaintiffs assign error to both aspects of the district court's decision, we address only the statute of limitations, because it is dispositive of the plaintiffs' claims against the six employees in their individual capacities. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Carey v. City of Hastings*, 287 Neb. 1, 840 N.W.2d 868 (2013).

[13] The six employees raised the statute of limitations within their motions to dismiss pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6). A challenge that a pleading is barred by the statute of limitations is a challenge that the pleading fails to

allege sufficient facts to constitute a claim upon which relief can be granted. *Carruth v. State*, 271 Neb. 433, 712 N.W.2d 575 (2006).

[14] To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. *Sherman T. v. Karyn N.*, 286 Neb. 468, 837 N.W.2d 746 (2013). As such, if a "complaint on its face shows that the cause of action is time barred, the plaintiff must allege facts to avoid the bar of the statute of limitations." See *Lindner v. Kindig*, 285 Neb. 386, 393, 826 N.W.2d 868, 874 (2013). See, also, *L.J. Vontz Constr. Co. v. Department of Roads*, 232 Neb. 241, 440 N.W.2d 664 (1989).

[15] To determine whether the district court erred in granting the six employees' motions to dismiss on statute of limitations grounds, the first question is whether the face of the plaintiffs' complaint shows that the claims against the six employees were time barred. If it does, we then consider whether the plaintiffs' complaint alleged facts that show the claims are not barred. When reviewing a dismissal order, the appellate court accepts as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the pleader's conclusions. *White v. Kohout*, 286 Neb. 700, 839 N.W.2d 252 (2013).

(a) Face of Complaint Shows
Claims Were Time Barred

[16-18] The plaintiffs sued the six employees in their individual capacities under § 1983. The law of the state in which a § 1983 action is brought provides the appropriate statute of limitations. *Bauers v. City of Lincoln*, 245 Neb. 632, 514 N.W.2d 625 (1994). "[F]or purposes of selecting one statute of limitations, § 1983 actions shall be characterized as personal injury actions." *Bauers*, 245 Neb. at 646, 514 N.W.2d at 634. In Nebraska, § 1983 claims are governed by the statute of limitations in Neb. Rev. Stat. § 25-207 (Reissue 2008). See *Bauers, supra*. Section 25-207 requires that actions for an

injury to the plaintiff's rights be filed within 4 years from the date on which the action accrued. *Bauers, supra*.

[19-21] "[A] statute of limitations begins to run as soon as the claim accrues." *Alston v. Hormel Foods Corp*., 273 Neb. 422, 425, 730 N.W.2d 376, 381 (2007). Although state law determines which statute of limitations applies to § 1983 claims, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." See *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) (emphasis in original). The U.S. Supreme Court has stated that a § 1983 claim generally accrues "'when the plaintiff has "a complete and present cause of action."'" See *Wallace*, 549 U.S. at 388.

[22,23] In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege facts establishing conduct by a person acting under color of state law which deprived the plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States. *State ex rel. Jacob v. Bohn*, 271 Neb. 424, 711 N.W.2d 884 (2006). Therefore, "[a] § 1983 claim accrues 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'" *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004). See, also, *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379 (4th Cir. 2014); *Hillcrest Property, LLC v. Pasco County*, 754 F.3d 1279 (11th Cir. 2014); *Bishop v. Children's Center for Developmental*, 618 F.3d 533 (6th Cir. 2010); *Gorelik v. Costin*, 605 F.3d 118 (1st Cir. 2010); *Douglas v. Noelle*, 567 F.3d 1103 (9th Cir. 2009); *Kripp v. Luton*, 466 F.3d 1171 (10th Cir. 2006); *Price v. City of San Antonio, Tex*., 431 F.3d 890 (5th Cir. 2005) (abrogated on other grounds as recognized by *Vidrine v. U.S*., No. 6:07-1204, 2008 WL 4198547 (W.D. La. Aug. 8, 2008) (unpublished opinion)); *Sameric Corp. Del., Inc. v. City of Philadelphia*, 142 F.3d 582 (3d Cir. 1998); *Veal v. Geraci*, 23 F.3d 722 (2d Cir. 1994). "'[The] plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt.'" *Gorelik*, 605 F.3d at 122.

In the instant case, the plaintiffs did not allege specifically when or how each of the six employees acted in a manner that violated the plaintiffs' rights. But the sole basis for the plaintiffs' claims against each of the six employees was his or her involvement in Ashley, Anthony Jr., and Ali's juvenile case as a caseworker, case management supervisor, or administrator. Consequently, the plaintiffs' claims against each of the six employees in their individual capacities accrued at some time during his or her individual involvement with the juvenile case.

The complaint sets forth when each employee was a caseworker, case management supervisor, or administrator for Ashley, Anthony Jr., and Ali's case:

> 11. During the course of the case with [DHHS], the . . . family had the following case managers/case management supervisors:
>
> a. Jennifer Holt in 2000
>
> b. Kee-Sha Adams-Parks/David Hamme[r] in 2001
>
> c. Abby Bowers/Sandy Thompson/Tonya Beckenhauer in 2001
>
> . . . .
>
> f. Jessica Hatfield/Sandy Thompson in 2002
>
> g. Charlie Bennett/Sandy Thompson in 2002, 2003 and 2004
>
> . . . .
>
> 87. In July, 2005, [the plaintiffs] meet with [DHHS] administrators, Todd Reckling and Chris Peterson and other [DHHS] staff. The [plaintiffs] are told to "drop everything" and come to this meeting. The administrators apologize to [the plaintiffs] for the fact that their case had been going on so long. The administrators tell the [plaintiffs] that they have to act quickly to reunify the children because the Lancaster County Attorney will soon file a motion to terminate parental rights.

The plaintiffs did not allege that the six employees were involved with Ashley, Anthony Jr., and Ali's juvenile case or had contact with the plaintiffs at any other time.

A § 1983 claim generally accrues when a person knows or has reason to know that he or she has been injured. See

*Gorelik v. Costin*, 605 F.3d 118 (1st Cir. 2010). Generally, a person "'is deemed to know or have reason to know at the time of the act itself.'" See *id*. at 122. The plaintiffs did not claim a failure to discover the alleged injurious conduct by the six employees. And the plaintiffs did not allege that at the time each of the six employees engaged in conduct which allegedly violated the plaintiffs' rights, they did not know or have reason to know of their injuries. Accordingly, on the face of the plaintiffs' complaint, the plaintiffs' claim against Holt accrued no later than 2000, because the complaint did not allege that she engaged in conduct which injured the plaintiffs after 2000. Similarly, the plaintiffs' claim against Hammer accrued no later than 2001, because the plaintiffs did not allege that he acted in a manner that injured the plaintiffs after 2001. The plaintiffs' claim against Hatfield accrued no later than 2002, because it was not alleged that she engaged in conduct which injured the plaintiffs after 2002. The plaintiffs' claim against Thompson accrued no later than 2004, because the complaint contained no allegations of conduct by her which injured the plaintiffs after 2004. And the plaintiffs' claims against Reckling and Peterson accrued no later than 2005, because the plaintiffs did not allege that Reckling and Peterson engaged in conduct which injured the plaintiffs after 2005.

Under the applicable statute of limitations, the plaintiffs had 4 years from the date of accrual of each claim to bring an action or until 2004, 2005, 2006, 2008, and 2009, respectively. The plaintiffs did not file their complaint until March 2011. Therefore, the face of the plaintiffs' complaint shows that the claims against the six employees were time barred.

### (b) Complaint Failed to Allege Facts Which Show Claims Are Not Barred

Because the plaintiffs' complaint on its face showed that their claims against the six employees were time barred, the plaintiffs had the burden of alleging "facts to avoid the bar of the statute of limitations." See *Lindner v. Kindig*, 285 Neb. 386, 393, 826 N.W.2d 868, 874 (2013). The plaintiffs did not do so.

The plaintiffs argue that the continuing tort doctrine applies to make their claims against the six employees timely. They assert that there was a "continuing pattern of tortious conduct" and that as a result, their claims "did not accrue until late 2009," when Ashley, Anthony Jr., and Ali's juvenile case was finally closed. See brief for appellants at 24. This argument lacks merit.

[24,25] The plaintiffs misunderstand the continuing tort doctrine. In Nebraska, the continuing tort doctrine does not delay when claims based on continuing torts accrue. See *Alston v. Hormel Foods Corp.*, 273 Neb. 422, 730 N.W.2d 376 (2007). "[T]he 'continuing tort doctrine' is not a separate doctrine, or an exception to the statute of limitations, as much as it is a straightforward application of the statute of limitations: It simply allows claims to the extent that they accrue within the limitations period." *Id.* at 429-30, 730 N.W.2d at 383. As such, "a claim for damages caused by a continuing tort can be maintained for injuries caused by conduct occurring within the statutory limitations period." See *id.* at 429, 730 N.W.2d at 383. A claim for damages caused by conduct occurring outside the statutory period preceding the lawsuit will be barred. See *id.*

Applying the continuing tort doctrine to the plaintiffs' complaint does not make their claims against the six employees timely. Rather, it highlights that their claims against the six employees were barred, because they were based on conduct that occurred more than 4 years before the action was commenced in March 2011. The 4-year statutory period preceding their lawsuit commenced in March 2007. As explained above, the complaint shows on its face that none of the six employees engaged in conduct which allegedly injured the plaintiffs after 2005. Therefore, the claims against the six employees were based on conduct occurring outside the limitations period preceding the instant lawsuit and are consequently time barred.

It may be reasonable to infer that the "ill effects" of the actions taken by the six employees were felt until 2009, when the juvenile case was finally closed. But the continuing tort doctrine "requires that a tortious act—not simply the

continuing ill effects of prior tortious acts—fall within the limitation[s] period." See *Alston*, 273 Neb. at 426, 730 N.W.2d at 381. In the absence of any allegations that the six employees engaged in tortious conduct during the limitations period preceding the plaintiffs' lawsuit, the continuing tort doctrine does not give the plaintiffs any relief.

The plaintiffs argue that until 2009, they were "subjected to a continuing, cumulative pattern of tortious conduct" by virtue of the "conduct on the part of the Defendants." See brief for appellants at 23. Even assuming, without deciding, that there may have been other DHHS employees that engaged in a pattern of tortious conduct within the 4-year limitations period preceding the plaintiffs' lawsuit, such conduct cannot be attributed to the six employees. The face of the plaintiffs' complaint does not show that any of the six employees worked on Ashley, Anthony Jr., and Ali's case during the limitations period.

The plaintiffs did not allege facts in their complaint which would avoid the bar of the statute of limitations. They did not allege a pattern of tortious behavior by the six employees that continued within the limitations period. And the plaintiffs did not allege facts which indicate that they did not or could not have discovered the alleged wrongs when they accrued.

### (c) Conclusion as to Statute of Limitations

The face of the plaintiffs' complaint alleged facts which show that the claims against the six employees in their individual capacities were barred by the applicable statute of limitations. The plaintiffs' complaint did not allege facts which would avoid this bar. Therefore, the district court did not err in sustaining the motion to dismiss filed by the six employees in their individual capacities.

### 4. Plaintiffs' Remaining Assignments of Error

The district court correctly determined that DHHS and the DHHS employees in their official capacities had sovereign immunity. It correctly determined that the guardian ad litem

was entitled to absolute immunity for conduct within the scope of his role in the juvenile proceedings. It correctly dismissed the six employees in their individual capacities because the plaintiffs' claims against them were barred by the statute of limitations. The remaining 12 DHHS employees sued by the plaintiffs were not parties to this action. Therefore, there are no defendants remaining in the lawsuit that could be found liable to the plaintiffs. As such, we do not need to address the remaining assignments of error.

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court that dismissed the plaintiffs' complaint.

AFFIRMED.

CASSEL, J., not participating.